IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 40246

| | | |
|---|---|---|
| IN THE MATTER OF THE TERMINATION OF THE PARENTAL RIGHTS OF JOHN (2012-06) DOE. | ) ) ) ) | |
| -------------------------------------------------------- | ) | |
| IDAHO DEPARTMENT OF HEALTH & WELFARE, | ) ) ) | Boise, December 2012 Term |
| Petitioner-Respondent, | ) ) ) | 2013 Opinion No. 25 |
| v. | ) ) | Filed: February 22, 2013 |
| JOHN (2012-06) DOE, | ) ) ) | Stephen W. Kenyon, Clerk |
| Respondent-Appellant. | ) ) ) ) | |

Appeal from the Magistrate Court of the First Judicial District of the State of Idaho, Kootenai County. Hon. Scott Wayman, Magistrate Judge.

Order terminating parental rights is affirmed.

Daniel G. Cooper, Coeur d'Alene, for appellant.

Stacia Crocker Hagerty, Coeur d'Alene, for Mother, as Amicus Curiae.

Honorable Lawrence G. Wasden, Attorney General, Boise, for respondent.

—————————————

J. JONES, Justice.

On November 3, 2011, the Idaho Department of Health and Welfare (the Department) initiated this action to terminate the parental rights of John Doe. The matter proceeded to trial where the magistrate court found that Doe had neglected and abandoned his minor child, D.C., and that it was in the best interest of the child that Doe's parental rights be terminated. We affirm.

1

# I.
## FACTUAL AND PROCEDURAL HISTORY

Doe is the biological father of D.C., who was born on January 25, 2008.[1] At the time of D.C.'s birth, Doe was incarcerated at the Idaho State Correctional Institution in Boise. Doe was released from prison on June 23, 2008, but returned to custody on July 19, 2008, due to a parole violation. Doe was released on February 26, 2010, only to reviolate his parole and to be returned to prison on June 25, 2010.

D.C. was sheltered by the Post Falls Police Department on November 9, 2010, when he was found living in a home where drugs and stolen property were discovered. At the time, he was in the custody of his paternal grandmother. The following day, the Kootenai County Prosecutor filed a petition under the Child Protective Act (CPA), requesting that the court grant temporary custody of D.C. to the Department. The petition named Doe as D.C.'s father, but Doe was apparently not served with a copy.[2] The petition alleged that D.C. was within the jurisdiction of the CPA due to (1) neglect; (2) abandonment; and (3) an unstable home environment.

A shelter care hearing was held on November 12, 2010. At the hearing, the court found that it was contrary to D.C.'s best interests to be returned to the home of his paternal grandmother. The court ordered that D.C. be sheltered with the Department pending further proceedings. At the shelter care hearing, the magistrate judge stated, "[w]e also have to notify the father. Even though he's incarcerated, he's entitled to have notice of these proceedings."

On December 3, 2010, the magistrate court held a hearing to adjudicate the CPA petition. Neither Doe, nor D.C.'s mother, were present at the hearing. At the conclusion of the hearing, the court ordered that the petition be granted and that D.C. be placed in the custody of the Department. A case plan hearing was held for D.C.'s mother on December 27, 2010. The court issued its case plan order for the mother on January 3, 2011, wherein it ordered the Department to take all reasonable steps, including DNA testing of Doe, to determine the identity of D.C.'s biological father.

---

[1] When D.C. was born, D.C.'s mother was married but not to Doe. Doe's paternity was largely assumed during the course of the ensuing legal proceedings but was not conclusively established until March 29, 2011.

[2] The clerk's record contains an 11/15/2010 entry, "Return of Service [Doe]―NOT FOUND―Boise State Prison." The return is not included in the record of appeal and there is no indication of why service on Doe was not accomplished. One would assume it to be like shooting fish in a barrel.

On March 29, 2011, based on DNA testing, it was determined that Doe was the biological father of D.C. The Department informed Doe of the paternity results in a letter dated April 13, 2011. On July 18, 2011, the Kootenai County public defender filed a substitution of counsel, indicating that Daniel G. Cooper, Doe's appellate counsel, was being substituted as counsel for Doe in the CPA proceeding.[3] Attorney Cooper provided counsel for Doe through the remainder of the CPA proceeding, including a case plan hearing held for Doe on July 19, 2011, wherein Mr. Cooper was present before the court and Doe participated telephonically from prison. At that hearing, the court informed Doe that a case plan which had been proposed for him on May 11, 2011, would be approved by court order and that he would be expected to perform in accordance with the plan.

On October 11, 2011, during a permanency hearing for D.C., the Department requested that the court grant a permanency plan of termination of parental rights as to both parents. The magistrate found that reunification was not in the best interests of D.C., that the Department had made reasonable efforts to finalize a permanency plan, and that none of the efforts had led to a stable living situation for D.C. Thus, the magistrate authorized the filing of a petition for termination of the parental rights of both parents.

On November 3, 2011, the Department filed a petition to terminate the parental rights of the parents. Attorney Cooper filed Doe's answer to the petition on January 23, 2012. The matter was tried during seven days in May and July of 2012, and on July 9 the magistrate judge announced his decision on the court record (Decision). The magistrate found that sufficient grounds existed to terminate Doe's parental rights based on both abandonment and neglect. The magistrate also found that termination of Doe's parental rights was in D.C.'s best interests.[4]

Doe filed a notice of appeal to this Court under I.R.C.P 83(a) and I.A.R. 12.2.

## II.
## ISSUES ON APPEAL

In his opening brief, Doe states the "issues presented," as follows:

---

[3] There is no documentation in the record that the public defender's office had previously been representing Doe in the proceeding.

[4] The magistrate court also terminated the mother's parental rights, but the mother has not appealed. Instead, she obtained leave to participate as amicus curiae in this appeal. The mother asserted in her amicus brief that the expedited appeal procedure under I.A.R. 12.2 was unfair to parents in termination cases and that grandparents should have more substantial rights in child protective and termination proceedings. Neither issue is addressed in this opinion as they have not been raised by the appellant, Doe.

Did the Court and/or Idaho Department of Health & Welfare violate [Doe's] statutory rights under the Child Protection Act, thereby denying him a meaningful and adequate opportunity to reunify with his son?

This statement implies that alleged infirmities in the CPA proceeding carried over into the termination proceeding and were of sufficient magnitude to invalidate the termination order. The magistrate found that Doe's parental rights should be terminated because he neglected and abandoned D.C., and that termination was in D.C.'s best interest. Doe does not directly attack these findings but, rather, focuses his challenge to the termination order upon the Department's alleged failure: to serve a summons upon Doe in the CPA proceedings; to promptly prepare and implement a case plan for Doe; and to give Doe an adequate period of time in which to perform the requirements of his case plan.

## III.
## DISCUSSION

### A. Standard of Review.

We review termination cases as set out in *Idaho Department of Health and Welfare v. Doe (2011-16)*:

> Grounds for termination of parental rights must be shown by clear and convincing evidence because each parent has a fundamental liberty interest in maintaining a relationship with his or her child. Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. On appeal, this Court will not disturb the magistrate court's decision to terminate parental rights if there is substantial, competent evidence in the record to support the decision. Substantial, competent evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. This Court is required to conduct an independent review of the magistrate court record, but must draw all reasonable inferences in favor of the magistrate court's judgment because the magistrate court has the opportunity to observe witnesses' demeanor, to assess their credibility, to detect prejudice or motive[,] and to judge the character of the parties.

152 Idaho 263, 267, 270 P.3d 1048, 1052 (2012). Furthermore, "questions of statutory interpretation are questions of law over which this Court exercises free review." *Idaho Dep't. of Health & Welfare v. Doe (2010-28)*, 150 Idaho 563, 566, 249 P.3d 362, 365 (2011) (quoting *Stuart v. State,* 149 Idaho 35, 40, 232 P.3d 813, 818 (2010)). And, where it is claimed that the trial court has abused its discretion, this Court examines:

> (1) whether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the outer boundaries of its discretion and

4

consistently with the legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason.

*Id.*

### B. The failure to personally serve Doe in the CPA proceeding is of no effect in this case.

On appeal, Doe argues that the magistrate court erred in terminating his parental rights because he was not personally served with a summons and a copy of the petition in the CPA proceeding. He contends he was deprived of a "meaningful and adequate opportunity to unite with son" by not having been served. Doe contends that, as D.C.'s "parent," it was mandatory under I.C. § 16-1611 that he be served. Alternatively, Doe contends that, even if this Court concludes that his status as a "parent" was not established at the time of the CPA proceeding, due to paternity issues, he was still entitled to discretionary service under I.C. § 16-1611.

The Department acknowledges that Doe was not served with a summons in the CPA proceeding. However, the Department contends that Doe was not entitled to service under I.C. § 16-1611(1) because he was not known to be a "parent" during the CPA proceeding. And further, the magistrate did not abuse his discretion by not requiring that he be served as "any other person." The Department contends that Doe was afforded all of the requisite procedural safeguards to which he was entitled during all stages of the termination proceedings.

Once a petition has been filed under the CPA, "service of process shall be made as provided in Idaho Code § 16-1611." I.J.R. 33(a). Idaho Code § 16-1611, provides:

> After a petition has been filed, the clerk of the court may issue a summons requiring the person or persons who have custody of the child to bring the child before the court at the adjudicatory hearing held in accordance with section 16-1619, Idaho Code. Each parent or guardian shall also be notified in the manner hereinafter provided of the pendency of the case and the time and place set for the hearing. A summons shall be issued and served requiring the appearance of each parent and legal guardian, and a summons may be issued and served for any other person whose presence is required by the child, either of his parents or guardian or any other person whose presence, in the opinion of the court, is necessary.

I.C. § 16-1611(1). "The service of the summons confers the court with personal jurisdiction over a party." *Lohman v. Flynn*, 139 Idaho 312, 318, 78 P.3d 379, 385 (2003).

The magistrate judge did not directly address Doe's contention that he was entitled to service of a summons in the CPA proceeding. The magistrate only noted that there was uncertainty as to whether Doe was D.C.'s father. Although Doe was listed as father on D.C.'s birth certificate, D.C.'s mother had, on a previous occasion, erroneously listed a man as father on

an earlier child's birth certificate.

Although Doe was not technically a "parent" within the definitions set out in I.C. § 16-2002(11), and even though the mother was married to another man at the time of D.C.'s birth, the initial and amended petitions in the CPA proceeding listed him as D.C.'s father and, therefore, more effort should have been made to serve him in that proceeding. It does appear that service was attempted but not accomplished. Nevertheless, the record reflects that Doe was on the service list for many of the CPA documents as early as November 24, 2010, and that his mother appeared in the proceeding through counsel on November 11, 2010. But, if he was entitled to be served, these facts would not be sufficient to accomplish that end. Regardless, Doe did appear in the CPA proceeding through counsel on July 18, 2011, and personally appeared and participated by telephone in the case plan hearing held the following day.

Except for circumstances not present in this case, "[t]he voluntary appearance of a party . . . constitutes voluntary submission to the personal jurisdiction of the court." I.R.C.P. 4(i)(1). A voluntary general appearance is equivalent to service of summons upon a defendant and will cure any defects in service. *Hutchinson v. State*, 134 Idaho 18, 21, 995 P.2d 363, 366 (Ct. App. 1999), (citing 4 Am. Jur. 2d, *Appearance* #2 (1995)). Doe's claim that he was somehow prejudiced by having not been served with process in the CPA is without merit.

### C. The alleged defects in the case plan do not require reversal.

At the termination trial, Doe's counsel argued that "creation of a case plan itself is mandatory under the statute. In this case that's simply something that the department neglected to do." The magistrate court addressed Doe's case plan argument in its Decision, stating that "the Department's actions, as far as not making a case plan immediately and preferring to confirm or deny [Doe's] parentage through the use of DNA testing, was entirely appropriate." The court determined that waiting on the case plan for paternity to be established was appropriate for three reasons: (1) there was an earlier incident where D.C.'s mother misidentified the father of a previous child on the child's birth certificate; (2) proceeding with the case plan and determining that Doe was not D.C.'s father would have been harmful to the child; and, (3) the Department had discretion under the circumstances to decide whether to proceed with a case plan before paternity was established.

On appeal, Doe renews his argument that the order terminating his parental rights should be reversed because the Department failed to provide him with a timely case plan to foster

6

reunification. Doe contends that the Department had a statutory obligation, under I.C. § 16-1621, to establish his case plan within 30 days of the adjudicatory hearing or within 60 days of D.C.'s removal from the paternal grandmother's home. Doe claims the magistrate court erred by concluding that it was proper for the Department to wait to develop a case plan until Doe was proven to be D.C.'s biological father. Moreover, Doe argues that even if this Court determines that the Department had authority to wait to issue Doe's case plan until paternity was established, Doe was still "denied timely preparation and determination of his case plan in the CPA case."

The Department asserts that Doe's argument that his case plan was not timely developed and ordered is misplaced. The Department relies on the fact that "at the outset the Department was required to confirm paternity and take further steps" under court order.

Idaho Code §16-1621 provides that, "[t]he department shall prepare a written case plan in every case in which the child is determined to be within the jurisdiction of the court, including cases in which the parent(s) is incarcerated." I.C. § 16-1621(1). Furthermore, "[t]he case plan shall be filed with the court no later than sixty (60) days from the date the child was removed from the home or thirty (30) days after the adjudicatory hearing, whichever occurs first." *Id*. Included in each case plan is a reunification plan. I.J.R. 44(a)(2). "The reunification plan shall specifically identify the tasks to be completed by… each parent." *Id*.

Questions of Doe's paternity arose at the mother's case plan hearing held on December 27, 2011. As part of the mother's case plan order, issued on January 3, 2011, the magistrate directed the Department to take all reasonable steps to determine the identity of D.C's biological father. The Department confirmed that Doe was the biological father of D.C. on March 29, 2011.

The Department first prepared a case plan for Doe in December of 2010. However, it was never finalized due to paternity issues and there is no indication in the record that it was furnished to Doe. After Doe's paternity was established, the Department prepared another case plan on May 11, 2011. A Department employee mailed a copy of the plan to Doe on May 12. The plan was slightly revised and a revised copy was mailed to Doe on May 19, 2011. It is not clear whether or when either of those plans was filed with the court. Doe's case plan hearing took place on July 19, 2011, and the magistrate ordered that the Department's plan be implemented.

The delay in developing Doe's case plan may have been warranted because his status as D.C.'s biological father was called into question and was not resolved until March 29, 2011. The

express language of I.C. §16-1621, relied on by Doe, only requires timely preparation of a case plan for "parents." Thus, because Doe's parental status was not established with certainty until the DNA test results were made available, it was not absolutely necessary to comply with the filing requirements set out in I.C. § 16-1621(1). However, the case plan should have been filed in a more timely fashion after Doe's paternity was conclusively established. But, Doe has provided the Court with no relevant authority to indicate that the failure to act more timely invalidates the outcome of the separate termination proceeding.

Doe also argues that he was not provided with a meaningful and adequate opportunity to accomplish his case plan because he was only given 84 days from the time his plan was ordered until the date the judge terminated reunification efforts. In essence, Doe argues that clear and convincing evidence does not exist to show that he neglected D.C., because he was never given an opportunity to work his case plan, let alone complete it. The magistrate judge responded to this argument in his Decision, as follows:

> But the reality is, looking at the totality of the circumstances from the date D.C. was born up till the present, there was no need to extend any further time before proceeding with the termination of parental rights. There was no parent/child bond there that needed to be preserved.
>
> Doe wrote a few letters to D.C. and had a couple of telephone visits with [him].
>
> But Doe was unable and is unable to stay straight, sober and clean from drugs and provide a stable home to D.C. when he is out of incarceration.

In other words, the magistrate took into account Doe's actions and attitude toward D.C. from the commencement of the CPA proceeding in making his determination on the neglect issue. And, it needs to be mentioned that neglect can be shown in more than one way.

Under I.C. § 16-2002(3) neglect can be established either by (a) conduct defined in I.C. § 16-1602(25) or (b) where a parent has failed to comply with the court's orders in a CPA case or the case plan and reinunification has not occurred within the time standards in I.C. § 16-1629(9). Thus, the non-compliance with the case plan alternative is not the sole means of establishing neglect. The magistrate determined that Doe had neglected D.C. under two prongs of the neglect standard:

> With regard to Doe. I find that he has legally neglected D.C. as defined by Idaho Code Section 16-2005(1)(b).

8

He has failed to comply with this case plan and court orders that were entered [in] the Child Protection Case.

Doe did not provide adequate documentation that he had completed any of the tasks on his case plan while he was in prison, even though he claimed that he did. Doe did eventually get the parenting class certificate submitted. And he did eventually obtain a substance abuse evaluation after he was released from prison. But he did not comply in any significant respects with any of the case plan requirements that he was required to do that could have been done in prison.

I find that he has been unable to provide proper parental care and control for D.C.'s well-being, as well as defined in Idaho Code Section 16-1602 subparagraph (25).[5]

Doe has not demonstrated that these findings are unsupported by substantial evidence in the record. Since the magistrate's finding of neglect under I.C. § 16-2002(3)(a) is supported by the record, we need not decide whether the record supports the finding under I.C. § 16-2002(3)(b).

Furthermore, Doe's parental rights were terminated both on grounds of neglect and of abandonment. "Statutory grounds for termination of parental rights are independent, and if any one or more of the grounds for termination are found, termination may be granted." *Roe v. Doe*, 142 Idaho 174, 179, 125 P.3d 530, 535 (2005). A parent abandons a child where "the parent has willfully failed to maintain a normal parental relationship including, but not limited to, reasonable support or regular personal contact." I.C. § 16-2002(5). The magistrate court found that Doe had abandoned D.C.:

I find by clear and convincing evidence that Doe has, also, legally abandoned D.C., as defined in Idaho Code Section 16-2005 subparagraph (a).

He has willfully failed to maintain a normal parental relationship. He has not provided any significant reasonable financial support. He has been unable to continue with regular personal contact. He was in prison when D.C. was born. He has been in and out of prison most of D.C.'s life. He continues, as well, to struggle with his drug addiction issues. And his criminal behavior appears to continue.

He, also, had an opportunity to step up and be a parent when he was paroled on these prior occasions before the Child Protection Act case and after it started, but he didn't. He would up committing new offenses and not engaging in the parent/child relationship.

---

[5] Under I.C. § 16-1602(25) a "neglected" child is one "[w]ho is without proper parental care and control, or subsistence, medical or other care or control necessary for his well-being because of the conduct or omission of his parents, guardian or other custodian or their neglect or refusal to provide them. . . ." I.C. § 16-1602(25)(a).

> These amounted to willful actions of Doe to choose to break the law. To give into his addiction and choose to use drugs. And he made the choice not to be a parent, basically, letting his mother be the parent.

> He has legally abandoned D.C.

Again, Doe has not demonstrated that these findings are unsupported by substantial evidence in the record.

Doe does cite an earlier case involving termination of a prison inmate's parental rights, where this Court vacated the judgment of termination. *Doe v. State*, 137 Idaho 758, 53 P.3d 341 (2002). However, in that case the prison inmate was continuously in prison and had made efforts to establish a relationship with his child. *Id.* at 761, 53 P.3d at 244. The situation here is rather different. The magistrate determined that Doe neither had made an effort to establish a parent-child relationship with D.C., nor that he appeared to want to do so, whether in or out of prison. After finding that Doe was not very credible and had never acted as a normal parent would with regard to his child, the magistrate said:

> I, also, observed his demeanor when he was testifying. And it was not worthy to the Court. That he seemed indifferent to the process. Strangely indifferent when he was testifying. And the Court was left with the evaluation of his testimony that he doesn't he want to be a parent. He wants his mother to raise D.C. I mean, that's the underlying message that he delivered to the Court through his testimony.

In sum, Doe has failed to show that the magistrate erred in finding that he had abandoned D.C. Even if the Department failed to implement the case plan in an appropriate fashion, the magistrate's finding of neglect is supported on a prong of neglect essentially independent of case plan performance. Doe has made no effort to show that it is not in the best interest of D.C. to terminate Doe's parental rights. There are no grounds to reverse the termination order.

## IV.
## CONCLUSION

We affirm the magistrate court's order terminating Doe's parental rights.

Chief Justice BURDICK, and Justices EISMANN, W. JONES and HORTON CONCUR.

10