# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 46476

In the Matter of: Jane Doe I and John Doe, Children Under Eighteen (18) Years of Age.

--------------------------------------------------------

IDAHO DEPARTMENT OF HEALTH AND WELFARE,

   Petitioner-Respondent,

v.

JANE DOE,

   Respondent-Appellant,

and

GUARDIAN AD LITEM,

   Intervenor-Respondent.

Boise, February 2019 Term

Opinion Filed: March 14, 2019

Karel A. Lehrman, Clerk

---

Appeal from the Magistrate Court of the Fifth Judicial District, State of Idaho, Lincoln County. Hon. Daniel Dolan, Magistrate Judge.

Decree terminating parental rights, <u>affirmed.</u>

Jeremy L. Pittard, Attorney at Law, Burley, for appellant.

Hon. Lawrence G. Wasden, Idaho Attorney General, Boise, for respondent.

---

BURDICK, Chief Justice.

Jane Doe ("Mother") appeals from a Lincoln County magistrate court's judgment terminating her parental rights to her minor children. The judgment also terminated the parental rights of the children's father ("Father"). He appeals in a separate action.

The children were placed in the custody of the Idaho Department of Health and Welfare (the "Department") following a March 2016 petition under the Child Protection Act ("CPA"). After the filing of the petition, the parents stipulated to an unstable home environment. In June 2016, the magistrate court ordered the parents to follow case plans provided by the Department. Roughly eight months later, the State filed a motion to terminate both parents' parental rights based on failure to comply with their case plans and prior neglect. After holding a trial, the magistrate court terminated both parents' parental rights.

Mother timely appeals and argues that the Department did not make adequate efforts to reunify the family and that the magistrate court erred by finding that the Department's efforts were reasonable. We affirm the termination of Mother's parental rights.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This appeal concerns the termination of Mother's parental rights to her two minor children. Mother and Father are the biological parents of the children. Prior to the termination trial, the children and parents were the subjects of a nearly two-year-long CPA proceeding. When the prosecutors first filed a petition under the CPA, the parents were listed with separate addresses, but were living together. However, the parents ended and rekindled their relationship at various times prior to and during the CPA proceeding. By the time of the termination trial, Mother and Father were permanently separated and Mother was residing with her parents at their home.

The Department became involved in early March 2016 after receiving reports of drug use and neglect involving the minor children. Prior to this, the Department had received referrals for the family on two prior occasions in 2013 and 2014 for the same issues. The Department's investigation revealed that both children had been born premature, exposed to drugs in-utero, and tested positive for methamphetamine at birth. Based on these concerns, the Lincoln County prosecutors filed a petition under the Child Protection Act in March 2016.

The Lincoln County magistrate court opened a CPA proceeding and placed the children in the legal custody of the Department under a protective order. However, the court ordered the children to remain with their parents for the time being. A week later, the Department and a Lincoln County law-enforcement officer conducted an unannounced home visit. The visit revealed that the home was in a state of disarray. Mother was not "able to remain still" and "had what appeared to be methamphetamine sores on her face." She admitted to no longer living at

home after an incident of domestic violence involving Father which the children had witnessed. She also stated that she had used methamphetamine within the past week and picked the children up afterwards. Declaring the children to be in imminent danger, the officer removed the children from the parents' custody and placed them in foster care. The children were placed with the foster parent who ultimately would care for the children during the CPA proceeding. At the subsequent shelter-care hearing, the court ordered the children to remain in the Department's custody. At the adjudicatory hearing a month later, both parents stipulated to an unstable home environment as the basis for the CPA proceedings and the children remained in the Department's custody.

About a month after the adjudicatory hearing, Mother agreed to both participate in and accomplish a case plan provided by the Department. The case plan contained sixteen tasks aimed at addressing "all original areas of concern that brought the family to the attention of the Department" and ensuring "the children will have a safe, stable, sanitary and drug-free home environment." The Department stated its primary goal was reunification and its secondary goal was adoption. Mother preferred making the secondary goal guardianship with her parents rather than adoption. The Department explained that guardianships are disfavored because they are an impermanent solution. The court indicated (according to the court minutes) that "[g]uardianship is something to keep in mind as they work through the plan."

Over the next several months, the court held numerous review hearings to assess the parents' progress with the case plan and the Department's efforts to reunify the family. In her appellate brief, Mother admits that she failed to satisfactorily complete her case plan during this time:

> Suffice it to say that the Appellant recognizes that she did not complete her case plan. She also acknowledges that during the pendency of these proceedings she was a single parent who was dealing with a severe drug addiction and challenging mental health issues.

During the same timeframe, the Department's stated primary goal was reunification but changed the secondary goal to adoption by relative. To this end, the Department actively sought out and evaluated various family members as possible foster-care placements. Mother's parents applied to become foster parents but were denied due to concerns about their medication use. They administratively appealed the Department's decision, but the appeal was denied for failure to include proper medical forms. They did not appeal the Department's decision to the district

3

court. The Department also looked into having the children's paternal grandparents and maternal aunt as possible foster parents, but their applications were also denied.

Almost a year after the children were first placed in the Department's custody, the court held a permanency hearing. The Department informed the court that it was looking into whether the children's great uncle was a suitable placement. In its report, the Department had changed its primary goal to adoption and its secondary goal to guardianship in one place, but changed the goals to reunification and adoption (nonrelative) in another. The Department advised the court it would inquire into whether the great uncle was a suitable foster parent, but would then schedule a POST ("Permanency Option Selection Team") meeting. At this hearing, Mother testified and the court extended the disposition of the permanency hearing for 30 days in order to allow the parents to show improvement. However, those 30 days were extended to almost 90 days after the hearing was continued until June 2017.

Days after the court originally extended the permanency hearing, the Department filed a petition to terminate parental rights. The Department notified the court that its attempts to contact the children's great uncle were unsuccessful. The court accepted the Department's recommendation for adoption as the permanent plan. The court advised the parties to prepare for a termination trial.

The termination trial was delayed while the parties inquired into whether a guardian ad litem should be appointed for the children's father. Mother's parents independently filed a petition for guardianship of the minor children four days prior to the October trial date. The court then continued the October trial date due to lack of proof regarding whether the parents had been properly served. During the interim, the court heard the grandparents' petition for guardianship. The court concluded that Idaho Code sections 16-1604 and 16-1629(8) give the Department the power and right to determine where and with whom the children reside. The court dismissed the petition because the Department did not consent to the guardianship.

Commencing in January 2018, the termination trial was split over three days in January and March 2018. Mother did not testify. The parties submitted written closing arguments in July 2018 and the court issued its memorandum decision and final judgment in October 2018.

## II.    ISSUES ON APPEAL

1. Should this Court inquire into the magistrate court's approval of the Department's reasonable efforts to reunify the children with Mother on appeal of the judgment terminating her parental rights?

4

2. Does substantial, competent evidence support the magistrate court's finding that termination of Mother's parental rights is in the best interests of the children?

## III. STANDARD OF REVIEW

Under Idaho Code section 16-2005(1), a court may terminate parental rights if it finds that at least one of the grounds for termination is present and termination is in the best interests of the child. *In re Doe (2014–23)*, 157 Idaho 920, 923, 342 P.3d 632, 635 (2015). The grounds for termination of parental rights must be proven by clear and convincing evidence. *Idaho Dep't of Health & Welfare v. Doe (2016-14)*, 161 Idaho 596, 598, 389 P.3d 141, 143 (2016). Clear and convincing evidence is "evidence indicating that the thing to be proved is highly probable or reasonably certain." *Doe I v. Doe II*, 150 Idaho 46, 49, 244 P.3d 190, 193 (2010) (quoting *In re Adoption of Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006)).

However, on appeal, "this Court will not disturb the magistrate court's decision to terminate parental rights if there is substantial, competent evidence in the record to support the decision." *Id.* (citing *State v. Doe*, 143 Idaho 343, 345, 144 P.3d 597, 599 (2006)). As such, "[f]indings are competent, so long as they are supported by substantial, albeit possibly, conflicting, evidence." *Doe v. Doe*, 148 Idaho 243, 246, 220 P.3d 1062, 1065 (2009) (quoting *Roe v. Doe*, 142 Idaho 174, 177, 125 P.3d 530, 533 (2005)) "Substantial, competent evidence is 'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Doe,* 150 Idaho at 49, 244 P.3d at 193 (quoting *Doe*, 143 Idaho at 345–46, 144 P.3d at 599–600). This Court "must conduct an independent review of the record, 'but must draw all reasonable inferences in favor of the magistrate court's judgment, as the magistrate court has the opportunity to observe witnesses' demeanor, to assess their credibility, to detect prejudice or motive and to judge the character of the parties.'" *In Interest of Doe I*, 163 Idaho 274, 277, 411 P.3d 1175, 1178 (2018) (quoting *In re Doe (2014-23)*, 157 Idaho at 923, 342 P.3d at 635).

## IV. ANALYSIS

**A. The Department's efforts at reunification and aiding a parent with a case plan are not relevant on appeal of the termination of parental rights.**

In her brief, Mother collapses her first four issues on appeal into a single, four-page argument section.[1] Her brief then presents the following argument:

---

[1] As set out in her brief, Mother's issues were as follows:

> [Mother] is asserting that Judge Dolan should have taken into account in his determination the Department's reasonable reunification efforts to: (1) aid Jane Doe in her labors to work the CPA case plan; and (2) the department's decision with whom they should place the children with during the pendency of the CPA action.

Mother concedes that this Court has definitively held that the "inquiry into reunification efforts is not relevant for the court to terminate parental rights." *Dep't of Health and Welfare v. Doe (2017-21)*, 163 Idaho 83, 96, 408 P.3d 81, 94 (2017). Nevertheless, she contends that a party who disagrees with a magistrate court's decision to adopt the Department's recommendations regarding reunification and placement is left without appellate recourse. So Mother asks this Court to "reverse its current precedent and analyze [her] due process claim by looking at the reasonable reunification efforts of the Department and the magistrates' approval of those efforts."

In lieu of declining to consider mother's issues on appeal for failure to match her argument to her issues[2], we reformulate those issues to conform with her argument as follows:

> Should this Court inquire into the magistrate court's approval of the Department's reasonable efforts to reunify Mother with her children on appeal from a judgment terminating her parental rights?

Having consolidated the issues, we will now address Mother's arguments relating to (1) the placement of the children and (2) the Department's efforts in aiding the completion of her case plan.

First, Mother's argument regarding the magistrate court's approval of the Department's placement decision is without merit. As she acknowledges, the magistrate court did not need to consider where the child was placed in order to properly terminate Mother's parental rights.

---

1. Did the magistrate court err by not addressing in its termination memorandum and, in consequence, deciding that the Idaho Department of Health and Welfare did not violate Jane Doe's due process rights by not allowing her children to be placed with family?

2. Did the magistrate court err in continually determining during the course of the CPA proceeding that the Idaho Department of Health and Welfare had made reasonable efforts to place the children in the least restrictive environment to them by placing the children in foster care instead of with two able and willing grandparents?

3. Did the Department of Health and Welfare violate Jane Doe's due process rights by not reasonably and adequately aiding her in her efforts to work the CPA case plan.

4. Did the magistrate court err in approving adoption as the permanent plan as outlined in the Orders Approving Adoption as the Permanent Plan filed on September 21, 2017, and on June 6, 2017?

[2] *See Bach v. Bagley*, 148 Idaho 784, 790, 229 P.3d 1146, 1152 (2010) ("Regardless of whether an issue is explicitly set forth in the party's brief as one of the issues on appeal, if the issue is only mentioned in passing and not supported by any cogent argument or authority, it cannot be considered by this Court.").

Even if the magistrate court did consider this when it terminated Mother's parental rights, this Court has made clear that "[o]nce the Department has legal custody of a child under the CPA, the Department and not the court has the authority to determine where the child should live." *Matter of Doe (2017-16)*, 163 Idaho 565, 570, 416 P.3d 937, 942 (2018) (citing *In re Doe*, 134 Idaho 760, 767, 9 P.3d 1226, 1233 (2000)). In fact, even if the Department's decisions were relevant to the termination of parental rights, those decisions are only subject to approval by the magistrate court. *See* I.C. § 16-1629(8) ("The department, having been granted legal custody of a child, shall have the right to determine where and with whom the child shall live . . . all other determinations relating to where and with whom the child shall live shall be subject to judicial review by the court and, when contested by any party, judicial approval."). This review is for the "limited purposes outlined in the statute." *Matter of Doe*, 163 Idaho at 570, 416 P.3d at 942 (citing *In re Doe*, 134 Idaho at 767, 9 P.3d at 1233 (listing purposes)).

Mother fails to point out in the record where she contested the Department's placement and why the court should have disapproved of that placement. The Department chose to place the children with a foster parent during the CPA proceedings after the parents stipulated to an unsafe home environment. The Department actively sought to place the children with their maternal grandparents, paternal grandparents, and a maternal great-uncle. However, finding all the proposed family members either unsuitable or unwilling, the Department decided to maintain placement with the foster parent. Even though no objection was raised below, the Department also expressed adequate justification for declining to pursue a guardianship with the maternal grandparents: (1) the Department viewed it as a disfavored option due to its impermanency; and (2) Mother was currently living with the maternal grandparents and she would be required to leave their home if a guardianship with them was put in place. Thus, even if it were relevant to termination, Mother makes no showing that the magistrate court abused its discretion by approving the placement.

Moving on to Mother's second argument, she is correct that this Court has held that inquiry into the Department's efforts at reunification is irrelevant to the termination of parental rights. *See In re Doe I (2017-21)*, 163 Idaho at 96, 408 P.3d at 94. Rather, "[r]easonable reunification efforts are a requirement under the Child Protective Act, which imposes a duty to ensure such efforts are made throughout the child protective action." *Id.* (citing *Idaho Dep't of Health & Welfare v. Doe (2016-11)*, 160 Idaho 824, 834, 379 P.3d 1094, 1104 (2016)).

Nevertheless, this Court has indulged such arguments after articulating that they are not pertinent to the termination of parental rights. *See, e.g.*, *In re Doe (2016-11)*, 160 Idaho at 834, 379 P.3d at 1104; *In re Doe (2015-21)*, 160 Idaho 154, 162, 369 P.3d 932, 940 (2016); *In re Doe (2009-19)*, 150 Idaho 201, 207, 245 P.3d 953, 959 (2010). When doing so, this Court has assessed the magistrate court's findings for substantial, competent evidence. *In re Doe (2016-11)*, 160 Idaho at 834, 379 P.3d at 1104.

Mother argues that this Court should evaluate these efforts in termination-of-parental-rights cases because a magistrate court's approval of the Department's actions cannot be appealed before the final order is entered. Mother contends that waiting for the final judgment places her in a procedural no man's land because this Court holds that an inquiry into reunification efforts is irrelevant to a final judgment that terminates parental rights. Mother admits that an aggrieved party "could possibly do an interlocutory appeal," but claims that such an appeal "would only prolong the proceedings of which time seems to be of the essence . . ."

We are not persuaded. Mother's argument confuses immediate appellate review and relevancy. As shown by *In re Doe (2016-11)* and the cases cited alongside it, such findings *can* be reviewed by this Court. 160 Idaho at 834, 379 P.3d at 1104. However, those cases also demonstrate that such findings are irrelevant to termination proceedings because reasonable efforts are requirements under the CPA, not Idaho's parental-rights termination statute.

This Court rejected a similar argument in *Idaho Department of Health & Welfare v. Doe*, 151 Idaho 498, 260 P.3d 1169 (2011). There, the parent argued that due process and the Idaho Code required the Department to make "reasonable efforts at reunification" before terminating parental rights. *Id.* at 506, 260 P.3d at 1177. The parent argued that the CPA's imposition of "reasonable efforts at reunification" required the Department to give her adequate time to complete the case plan before proceeding to termination. *Id.* Unpersuaded, this Court observed that "[b]oth the termination statute and the CPA seek to balance aims that are sometimes in conflict—such as the best interests of the child and family unity." *Id.* However, once the parent stipulated to the purview of the CPA and the court placed the child in the Department's legal custody, the Department was authorized to petition for termination under Idaho Code section 16-1624. *Id.* Thus, the question relevant to termination was whether the Department could prove the statutory grounds by clear and convincing evidence. *Id.* Because that question is left to the trial process, the parent's due-process rights were not violated. *Id.*

Here, the parents stipulated to jurisdiction under the CPA and the court placed the children in the Department's legal custody. Thereafter, the Department had the statutory authority to petition for termination. I.C. § 16-1624(1). Once the Department petitioned to terminate Mother's parental rights, the Department still had to prove the statutory basis for termination by clear and convincing evidence. I.C. § 16-2005. Thus, her due process rights were protected. Accordingly, Mother fails to present a compelling argument for why a lack of immediate appellate recourse for a court's determination of the Department's reasonable efforts impacts her due process rights for termination of parental rights.

Even if this Court were to review Mother's argument, the magistrate court's findings are supported by substantial, competent evidence. Mother's first appellate brief contains only two citations to the record. The first citation refers to the fact that she brought up the Department's efforts in closing arguments. The second citation is a broad gesture to 82 pages of testimony from Mother's addiction-specialist physician which is tacked on to her concluding statement:

> By carefully looking at the record before it, this Court should conclude that the Department did not reasonably aid in the reunification of the children by failing to provide adequate treatment for [Mother] and by not allowing [the minor children] to be placed with [Mother's] parent which would have greatly aided [Mother] in her efforts to complete the case plan. (*See* Tr. pgs. 498–580 (testimony of Dr. Hadlock))

Mother's physician was the sole testimony presented on the March 2018 trial date. Mother began treatment with the physician in April 2017, a little more than a year after the children were placed in the Department's custody. He criticized some of the provider's handling of Mother's medications and opined that he would have approached Mother's mental health and substance-abuse issues differently. He even went so far to say that some of the medication management tactics might have exacerbated her condition. He opined that this may have made it more difficult for her to complete her case plan.

Even so, Mother does not elaborate how or why this testimony shows that the magistrate court's finding on this issue is not supported by substantial, competent evidence. The physician also revealed that Mother tested positive for methamphetamine in December 2016 and April 2017 as well as "bath salts" in January 2017. Likewise, the physician's belief that Mother had been stable the entire year he had treated her was undercut when he admitted he was unaware of Mother's July 2017 delusions about a judge monitoring her through the television. This occurred at the same time Mother reported that she was not taking her mental health medications as

9

directed. The physician later indicated the medication stoppage was the result of a miscommunication.

"If the trial court's findings of fact are based upon substantial and competent, although conflicting evidence, they should not be disturbed on appeal." *Doe I v. Doe*, 138 Idaho 893, 906, 71 P.3d 1040, 1053 (2003) (citing *Halen v. State*, 136 Idaho 829, 832, 41 P.3d 257, 260 (2002)). Here, substantial, competent evidence supports the court's findings that the Department's efforts were reasonable notwithstanding the physician's testimony. The following finding by the magistrate court is representative of the Department's efforts and its results:

> Mother has not provided proof of completion of mental health treatment. Mother was giving [sic] a list of 6 different provides [sic] for mental health services contained in exhibit 8. Mother chose to go to Crosspointe, Mother did not complete her treatment at Crosspointe. Mother changed to Valley Community Counseling in the late summer of 2017 and started with a new mental health counselor, [J.J.]. It was reported Mother was doing better when working with [J.J.]. Mother was better able to stay on task and was not having delusions of being monitored by a Judge through her TV. In December 2017, less than 6 months later, [J.J.] discharged Mother from mental health treatment for non-compliance. After being discharged by [J.J.] Mother notified [E.D], Mother's Department case worker that she, Mother, no longer needed mental health counseling. At the close of the evidence on March 16, 2018 there is no evidence that Mother had obtained new mental health counselling.

Mother's social worker testified about when she questioned Mother concerning her discharge from counseling:

> Q. . . . And what was the nature of that discussion? What did you tell her about that treatment?
>
> A. That I was informed that she had been discharged from the services due to noncompliance.
>
> Q. And what was her response to that?
>
> A. She appeared confused. She felt that she had done what she was asked of with [J.J.].
>
> Q. And since that time in January, has she notified you that she has obtained another provider for counseling?
>
> A. No. During our conversation, I advised her that it was important to find a new counselor, an agency to go through, and she felt that she does not need any more counseling at this time.

This testimony shows that the court's finding that the Department made reasonable efforts is supported by substantial, competent evidence. Mother's failure to complete the case plan was due, at least in part, to her efforts, not because the Department's efforts were substandard.

As a practical matter, Mother fails to articulate why she failed to bring any of these concerns to the court's attention before closing arguments at the termination trial. Mother correctly recognizes that "[o]nce a child has been placed in the legal custody of the State, the Department must make reasonable efforts to reunify children with their parents if there are no aggravating circumstances." *In Interest of Doe*, 164 Idaho 143, 146, 426 P.3d 1243, 1246 (2018). However, Mother overlooks that the court is required to make case-specific findings regarding the Department's reasonable efforts to finalize the permanency goal at both review and permanency hearings. *See* I.C. § 16-1622(2)(c). Though Mother failed to include the transcript of review hearings in the record, the court minutes reveal that Mother inquired about finding closer testing facilities and stated that the Department's reports don't reflect some of her progress. Without more, Mother has failed to show error on this issue. *W. Cmty. Ins. Co. v. Kickers, Inc.,* 137 Idaho 305, 306, 48 P.3d 634, 635 (2002) ("In the absence of a record that is adequate to review the appellant's claims, we will not presume error below.")

Lastly, in her reply brief, Mother presents a wholly new argument contending that the Department committed a "gross due process violation" by allowing the foster mother to participate in the post-permanency meeting in which the Department decided against guardianship. Mother takes issue that her interests weren't represented at that meeting.

Mother's argument is unpersuasive. First, this argument is not touched upon in her original brief. *Shepherd v. Shepherd*, 161 Idaho 14, 20, 383 P.3d 693, 699 (2016) ("[T]his Court will not consider arguments raised for the first time in the appellant's reply brief."). Second, Mother does not support this argument with relevant legal authority other than an unsupported reference to due process. Lastly, Mother stipulated to an unstable housing environment as the basis for CPA jurisdiction so she affirmatively assented to the Department's custody over her children. And "[o]nce the Department has legal custody of a child under the CPA, the Department and not the court has the authority to determine where the child should live." *Matter of Doe (2017-16)*, 163 Idaho at 570, 416 P.3d at 942 (citation omitted).

**B. Mother has failed to show that the magistrate court's finding on best interests of the children was not supported by substantial, competent evidence.**

To terminate the parent-child relationship, a court must find by clear and convincing evidence that at least one of the statutory bases for termination is present and that termination is in the best interest of the child. *Idaho Dep't of Health & Welfare v. Doe*, 162 Idaho 266, 269, 396 P.3d 695, 698 (2017) (citing *In re Doe (2015-03)*, 159 Idaho 192, 196, 358 P.3d 77, 81)). Here, Mother challenges the magistrate court's finding that termination is in the children's best interests.

On this issue, Mother simply rehashes her argument regarding the prior issues on appeal instead of challenging the magistrate court's findings on best interests of the children. Mother argues that placing the children in a guardianship with her parents was in their best interests. Mother acknowledges that the children have been in foster care for the duration of the CPA proceedings but argues that the children have a strong bond with her and her parents. She argues that the magistrate court "erred in not ordering the Department to fully and fairly explore the guardianship with the maternal grandparents."

These arguments do not show error in the magistrate court's decision on best interests of the children. A magistrate court's decision on termination of parental rights will not be disturbed so long as it is supported by substantial, competent evidence. *See Doe I v. Doe*, 138 Idaho 893, 906, 71 P.3d 1040, 1053 (2003). Because Mother does not argue that the court's decision lacked substantial, competent evidence, we decline to presume error on appeal. *W. Cmty. Ins. Co.*, 137 Idaho at 306, 48 P.3d at 635 ("Error will not be presumed but must be affirmatively shown on the record by appellant.") (citation omitted).

## V. CONCLUSION

For the reasons stated above, we affirm the magistrate court's decree terminating Mother's parental rights.

Justices BRODY, BEVAN, STEGNER, and MOELLER **CONCUR**.