# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 46723

In the Matter of:  Jane Doe I,
a Child Under Eighteen (18) Years of Age.

IDAHO DEPARTMENT OF HEALTH
AND WELFARE,

       Petitioner-Respondent,

v.

JOHN DOE (2019-03),

       Respondent-Appellant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Filed:  June 19, 2019

Karel A. Lehrman, Clerk

THIS IS AN UNPUBLISHED
OPINION AND SHALL NOT
BE CITED AS AUTHORITY

---

Appeal from the Magistrate Division of the District Court of the Fifth Judicial District, State of Idaho, Cassia County.  Hon. Blaine P. Cannon, Magistrate.

Order terminating parental rights, <u>affirmed</u>.

Clayne S. Zollinger, Jr., Burley, for appellant.

Hon. Lawrence G. Wasden, Attorney General; James T. Baird, Deputy Attorney General, Boise, for respondent.

---

BRAILSFORD, Judge

John Doe (Father) appeals from the magistrate's order terminating Father's parental rights to his daughter (Daughter).  Father argues the magistrate erred in concluding Father neglected Daughter.  We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Daughter was born in Idaho in January 2012.  Shortly after Daughter was born, Father left for California.  While Father was in California and Daughter was about five months old, Daughter's mother (Mother) gave Daughter's maternal grandmother (Grandmother) custody of Daughter.  Mother went to California to be with Father, did not return to care for Daughter, and

1

was eventually incarcerated. As a result, Grandmother became Daughter's primary caregiver and guardian.

Grandmother, who has struggled for many years with drug addiction, cared for Daughter until November 2015 when Grandmother was arrested for drug trafficking after a pound of methamphetamine was found in her home. Following Grandmother's arrest, law enforcement declared Daughter in imminent danger; a magistrate awarded the Idaho Department of Health and Welfare (Department) temporary legal custody of Daughter; and the Department placed Daughter with a foster family.

The Department opened a child protective case for Daughter, and in January 2016, a case plan (2016 plan) was adopted for Grandmother to perform. This 2016 plan was later revised in May 2016 to include Mother and Father, although Father was still in California. Father eventually became aware Daughter had been placed in foster care, but he did not return to Idaho to care for Daughter. Although Father accepted the 2016 plan, he did not comply with it. Grandmother completed the 2016 plan, however, and in February 2017, Daughter returned to Grandmother's care.

In August 2017, Grandmother was again charged with drug-related crimes. As a result, law enforcement once again declared Daughter in imminent danger. After this second declaration, Daughter tested positive for the presence of methamphetamine; the Department opened this second child protection case; and Daughter was again placed with her prior foster family. In November 2017, another case plan (2017 plan) was adopted for Grandmother, Mother, and Father to perform.

While Father was involved in the planning for and agreed to participate in the 2017 plan, he did not make any real progress under the plan. He was arrested in May 2018 following an altercation with his mother. Due to this arrest and his multiple probation violations between February and April 2018, Father was incarcerated from May 2018 through August 2018, when he was released on probation.

In August 2018, the Department filed a petition to terminate the parental rights of Mother, Father, and Grandmother, alleging they each had neglected Daughter. On December 5, 2018, the magistrate held an evidentiary hearing on the petition. Mother, Father, Grandmother, Daughter's foster parent, and three Department employees testified at the hearing.

Following the evidentiary hearing, the magistrate issued a "Decision and Order Terminating Parental Rights," which it subsequently amended. The magistrate ruled Grandmother was not a proper party because she had no parental rights. The magistrate also terminated Father's parental rights, ruling that he had neglected Daughter and that it was in Daughter's best interests to terminate Father's rights. Father timely appeals.[1]

## II.

## STANDARD OF REVIEW

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). The Fourteenth Amendment to the United States Constitution protects this interest. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Because a fundamental liberty interest is at stake, a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *see also* Idaho Code § 16-2009; *In re Doe*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652. Clear and convincing evidence is generally understood to be evidence indicating the thing to be proved is highly probable or reasonably certain. *In re Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006).

On appeal, this Court examines whether the magistrate's decision terminating parental rights is supported by substantial and competent evidence, which means evidence a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The substantial evidence test also requires a greater quantum of evidence in cases, such as this case, where the magistrate's findings must be supported by clear and convincing evidence, instead of a mere preponderance. *Doe v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Further, objectively supportable grounds must support the magistrate's termination decision. *Doe*, 143 Idaho at 346, 144 P.3d at 600. This Court will indulge all reasonable inferences in support of the magistrate's termination decision. *Doe*, 148 Idaho at 245-46, 220 P.3d at 1064-65. If the magistrate's findings are based on substantial and competent

---

[1] The magistrate also terminated the Mother's parental rights, and she separately appeals that termination.

3

evidence, they will not be disturbed on appeal despite conflicting evidence. *In Re Doe*, 164 Idaho 883, 891, 436 P.3d 1232, 1240 (2019).

## III.

## ANALYSIS

Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Idaho Code Section 16-2005 permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interests and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

Idaho Code Section 16-2002(3)(a) defines "neglect" as any conduct included in I.C. § 16-1602(31). Section 16-1602(31)(a) provides, in pertinent part, that a child is neglected when the child is without proper parental care and control, or subsistence, medical or other care or control necessary for his or her well-being because of the conduct or omission of his or her parents, guardian, or other custodian or their neglect or refusal to provide them. Neglect also exists where the parent has failed to comply with the court's orders or the case plan in a Child Protective Act case and the Department has had temporary or legal custody of the child for fifteen of the most recent twenty-two months and reunification has not been accomplished by the last day of the fifteenth month in which the child has been in the temporary or legal custody of the Department. I.C. § 16-2002(3)(b).

## A.    Substantial Evidence Supports Conclusion Father Neglected Daughter

The magistrate in this case ruled Father neglected Daughter under I.C. § 16-2002(3)(a) (adopting definition of "neglect" in I.C. § 16-1602(31)(a)) because he failed to provide proper parental care, control, and subsistence in support of Daughter's well-being. The magistrate also ruled, alternatively, that Father neglected Daughter under I.C. § 16-2002(3)(b) by failing to comply with the 2017 plan. These alternative rulings (in conjunction with the ruling that termination is in Daughter's best interests) are independent bases for terminating Father's

4

parental rights. *See Idaho Dep't of Health & Welfare v. Doe (2012-06)*, 154 Idaho 175, 181-82, 296 P.3d 381, 387-88 (2013) (noting finding of neglect under either I.C. § 16-2002(3)(a) or I.C. § 16-2002(3)(b) supports termination). Father does not challenge the magistrate's best-interests ruling; rather, Father only challenges the magistrate's ruling of neglect and argues the ruling is not supported by clear and convincing evidence. Although Father only mentions the magistrate's finding of neglect generally, some of Father's specific challenges appear to implicate the magistrate's alternative conclusion that Father failed to comply with the 2017 plan. Regardless, both of the magistrate's conclusions of neglect under I.C. §§ 16-2002(3)(a) and (3)(b) are supported by substantial and competent evidence.

In support of the magistrate's finding of neglect under I.C. § 16-2002(3)(a), the magistrate found Father left Daughter when she was around five months old to go to California "where his life went into a downward spiral of drug abuse." While in California, Father overdosed and was in a coma for three days; was charged with illegal possession of a weapon; and was homeless, living on the streets for five years. Although Father occasionally worked odd jobs, he "provided little financial support for [Daughter]" while in California, and the Department was unable to locate Father to determine if he could care for Daughter. Although Father eventually did learn Daughter was under the Department's care, he did not return to Idaho because he wanted to avoid an outstanding arrest warrant, and he did not take steps to care for Daughter.

Further, the magistrate found that when Father returned to Idaho in 2016, he continued to struggle with substance abuse and with legal problems. While in Idaho, Father lived with his mother, who has a history of methamphetamine use and a felony drug conviction. Father violated his probation by testing positive for alcohol and methamphetamine. He was arrested following an altercation with his mother at her home, and he was incarcerated for his probation violations. Although Father has disability income, it is insufficient to provide for Daughter's support, and he has provided "almost no financial support" for Daughter over the years. The magistrate did acknowledge that, in the three months preceding the termination hearing, Father "is doing the best he has since [Daughter's] birth," is free from drugs, and is taking medication for his mental health issues. The magistrate found, however, that this improvement did not outweigh Father's failure to provide proper parental care and control for Daughter over "the last five years."

5

In support of the magistrate's alternative conclusion under I.C. § 16-2002(3)(b) that Father failed to comply with the 2017 plan, the magistrate found that Daughter had been in the Department's custody for more than fifteen of the last twenty-two months from August 2017 through December 2018 and that Father made only "little progress" under the plan. Among Father's failures, the magistrate noted Father did not complete a substance abuse treatment program; did not treat his mental health issues; failed random drug testing; failed to comply with probation; failed to maintain a stable, drug-free residence; failed to provide for Daughter's basic needs; missed fifteen scheduled visits with Daughter while incarcerated; and failed to complete a parenting class.

Without specifying whether his challenge is under I.C. § 16-2002(3)(a) or I.C. § 16-2002(3)(b), Father contends the district court's ruling of neglect is premised on a "series of erroneous findings." Father identifies three purportedly erroneous findings. First, Father takes issue with the magistrate's statement that Father's "recent efforts [to address his drug use and to improve his parenting skills] go back only three months or so and are far outweighed by the preceding years of neglect." Father argues this statement "ignores the testimony . . . that Father had been making weekly visits [with Daughter] since the inception of the case."

This argument is without merit. Contrary to Father's assertion, the magistrate did not ignore Father's visits with Daughter. Rather, the magistrate specifically found that "[Father] was offered 44 visits with [Daughter]. He attended 25 of the visits. He missed 15 visits because he was incarcerated. . . . [Daughter] always does well with [Father] during visits [but] Daughter doesn't see Father as a parental figure." This finding is supported by the testimony offered during the termination hearing, and Father fails to identify any specific testimony about his visits with Daughter which he contends the magistrate "ignored." Despite Father's supervised visits, the magistrate concluded "a review of the last five years makes it clear [Father] has not provided [Daughter] with proper parental care and control." Substantial and competent evidence supports this conclusion. *See Doe (2012-06)*, 154 Idaho at 181, 296 P.3d at 387 (affirming magistrate's termination based on Doe's conduct from commencement of child protection proceeding).

Next, Father argues the magistrate's "treatment of the fact that Father lived at home with his mother" is "troublesome." He contends the magistrate had a "mistaken belief that to provide housing a parent must have [his] own apartment or home"; the Department "failed its duty to

6

investigate [Father's mother's home]" to determine if it was appropriate for Daughter's placement; and there was "no evidence [Father's mother's] home was not appropriate."

This argument mischaracterizes the magistrate's analysis about Father's ability to provide for Daughter. The magistrate never ruled Father must have his own residence to avoid termination of his parental rights. Rather, the magistrate found that Father is unemployed; Father's disability income is inadequate to provide for Daughter unless he lives with his mother; Father cannot qualify for subsidized housing because he previously caused property damage while living in subsidized housing; and Father relies on food stamps and food boxes from charity.

Moreover, Father's argument ignores the evidence. There is ample evidence Father's mother's home is not a safe, stable environment for Daughter. For example, the magistrate found Father was twice arrested at his mother's home--once in 2016 while in possession of methamphetamine and again in 2018 for purportedly battering his mother. The magistrate also found Father's mother has a history of methamphetamine use and a felony drug conviction. Substantial and competent evidence supports these findings and the magistrate's conclusion Father has failed to maintain safe and sanitary housing free from drugs.

Finally, Father argues the magistrate's finding that Father failed to complete a parenting class ignores a Department employee's testimony that the Department did not hold the class "because of a lack of sufficient students." Even assuming, however, that the Department (versus Father) is responsible for Father's failure to complete a parenting class as the 2017 plan requires, this failure was just one of many failures the magistrate found. Irrespective of Father's completion of a parenting class, substantial and competent evidence still supports the magistrate's conclusion Father failed to comply with the 2017 plan.

**B.      Father Failed to Show the Department's Reunification Efforts Were Unreasonable**

On appeal, Father also argues the Department failed to make reasonable efforts to reunite him with Daughter once the Department was aware Mother and Grandmother were not viable placement options. In support, Father again notes the Department's failure to investigate his mother's home for Daughter's placement and also the magistrate's consideration of Father's failure to complete a parenting class.

The Idaho Supreme Court has repeatedly held that an "inquiry into the Department's efforts at reunification is irrelevant to the termination of parental rights." *In re Doe*, 164 Idaho at

7

889, 436 P.3d at 1238. Nevertheless, the Court "has indulged such arguments after articulating that they are not pertinent to the termination of parental rights." *Id.* at 889-90, 436 P.3d at 1238-39. When doing so, the Court has assessed the magistrate's findings for substantial and competent evidence.

As noted above, there is substantial and competent evidence Father's mother's home is not a safe, stable environment for Daughter. Further, there is also substantial and competent evidence Father failed to comply with the 2017 plan even if the Department is responsible for Father's failure to complete a parenting class. Accordingly, Father's argument that the Department did not take reasonable efforts to reunite him with Daughter fails.

## C.    Father Failed to Establish a Violation of Idaho Code § 16-2009

Father argues the magistrate's decision terminating Father's parental rights is "invalid" because there was neither a court stenographer at the termination hearing nor was the hearing mechanically recorded. Father contends the magistrate conducted the hearing in violation of I.C. § 16-2009. Section 16-2009 provides, in relevant part, that "stenographic notes *or* mechanical recording of the hearing shall be required." (Emphasis added).

Father's argument is without merit. In the appellate record, there is a transcript of the termination hearing transcribed by an official court reporter. Review of the transcript makes clear a mechanical recording device recorded the hearing. Occasionally, the court reporter notes "inaudible" in the transcript, but the context and meaning of the testimony is preserved despite these infrequent notations. *See In re Doe*, 165 Idaho 33, 39, 437 P.3d 33, 39 (2019). Moreover, Father fails to identify any portion of the proceeding that was not properly recorded and transcribed. Because the hearing was mechanically recorded and transcribed by an official court reporter, Father has failed to show a violation of I.C. § 16-2009.

## IV.

## CONCLUSION

Substantial and competent evidence support the magistrate's findings that Father neglected Daughter. Accordingly, we affirm the magistrate's order terminating Father's parental rights.

Chief Judge GRATTON and Judge HUSKEY **CONCUR**.