# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 47624

| | | |
|---|---|---|
| In the Matter of: John Doe I and Jane Doe I, Children Under Eighteen (18) Years of Age. | ) ) ) | |
| STATE OF IDAHO, DEPARTMENT OF HEALTH AND WELFARE, | ) ) ) | Filed: March 16, 2020 |
| Petitioner, | ) ) | Karel A. Lehrman, Clerk |
| v. | ) ) | THIS IS AN UNPUBLISHED |
| JOHN DOE (2019-43), | ) ) | OPINION AND SHALL NOT BE CITED AS AUTHORITY |
| Respondent. | ) ) ) | |

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. Courtnie Tucker, District Judge.

Judgment terminating parental rights, <u>affirmed</u>.

Aaron Bazzoli, Canyon County Public Defender; Alex W. Brockman, Deputy Public Defender, Caldwell, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kathryn T. Garrett, Deputy Attorney General, Boise, for respondent.

_____

HUSKEY, Chief Judge

John Doe appeals from the magistrate court's judgment terminating his parental rights, arguing the court erred when it terminated his parental rights. The court's finding that Doe neglected his children by failing to comply with the case plan and providing appropriate care and control is supported by substantial and competent evidence. Similarly, the magistrate court's finding that terminating Doe's parental rights is in the best interests of the children is also supported by substantial and competent evidence. The magistrate court's judgment terminating Doe's parental rights is affirmed.

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

Doe is the biological father of three minor children, Child 1, who is not the subject of the underlying Child Protective Act (CPA) case, B.P., and D.P. Doe was married to the children's mother. In a previous, unrelated Montana case, B.P. and D.P. were removed from Mother's care and custody was granted to Doe. Doe returned to Idaho with B.P. and D.P., and Mother soon rejoined them. In November 2016, D.P. was declared in imminent danger. At the subsequent shelter care hearing, B.P. was added to the CPA case. On December 1, 2016, at the adjudicatory hearing, the magistrate court vested legal custody of B.P. and D.P. with the Department of Health and Welfare (Department). That same month, the magistrate court approved a case plan for Doe. On January 18, 2018, after the children had been in custody for fifteen months, the Department petitioned to terminate Doe's parental rights. In June 2018, the magistrate court relieved the Department of making any further reasonable efforts for reunification based on Doe's lack of progress.

The hearing to terminate Doe's parental rights was scheduled intermittently between October 2018 and July 2019; the hearing lasted approximately eight days. At the end of the hearing, the magistrate court found by clear and convincing evidence that Doe had neglected his children, had not accomplished reunification within fifteen of the most recent twenty-two months, and that termination of Doe's parental rights is in the best interests of the children. Doe timely appeals.

# II.

## STANDARD OF REVIEW

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *Doe v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally

understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *In re Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the trial court's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

## III.

## ANALYSIS

Doe argues the magistrate court's decision to terminate his parental rights should be reversed because the magistrate court erred when it found that Doe neglected his children. Doe also asserts that the magistrate court erred when it found it is in B.P.'s and D.P.'s best interests to terminate Doe's parental rights. Doe does not challenge any of the magistrate court's factual findings, only whether those findings rise to the level of substantial and competent evidence to support the magistrate court's findings.

### A.  Review of Reasonable Efforts

Doe argues the Department did not make reasonable efforts to provide him with sufficient housing resources such that he could comply with the case plan requirement to provide safe and stable housing. To the extent Doe is arguing the Department had an obligation to engage in reasonable efforts, those efforts relate to reunification in the CPA case. It is well-settled that the Department's efforts at reunification are not relevant to the magistrate court's termination decision under Idaho Code § 16-2005. *See In re Doe*, 164 Idaho 883, 889, 436 P.3d 1232, 1238 (2019). To the extent this argument is raised, we decline to address it.

### B.  Termination

#### 1.  Statutory basis

Doe argues there is not clear and convincing evidence of his neglect, but even if there is, he is not directly responsible for his failure to comply with the case plan and, thus, it was error for the magistrate court to terminate his parental rights on the grounds of neglect. We hold that the magistrate court's determination that Doe neglected his children is supported by clear and convincing evidence.

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the

Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id.* Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *see also* I.C. § 16-2009; *In re Doe*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

Idaho Code Section 16-2005 permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interests and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117. Neglect also exists where the parent has failed to comply with the court's orders or the case plan in a CPA case and the Department has had temporary or legal custody of the child for fifteen of the most recent twenty-two months and reunification has not been accomplished by the last day of the fifteenth month in which the child has been in the temporary or legal custody.

The magistrate court found that Doe had neglected his children on two different statutory grounds. First, Doe failed to comply with the court-ordered case plan and was unable to accomplish reunification within fifteen of the most recent twenty-two months pursuant to I.C. § 16-2002(3)(b). Second, Doe did not exercise proper parental care and control over B.P. and D.P., and his ongoing lack of care constituted neglect under I.C. § 16-1602(31)(a). The magistrate court's finding of neglect on each ground is supported by clear and convincing evidence.

Doe was present when the requirements of the case plan were discussed in court, and he was also present at a meeting with the case manager a month later when the case plan requirements were discussed. The case plan required Doe to: provide a safe, clean, and

secure residence for a minimum of 120 consecutive days; secure and maintain legitimate and sufficient income to meet the financial needs of the family, documenting the income source, and the ability to meet the needs for 120 consecutive days; attend, participate, and complete a protective parenting plan; and complete a mental health evaluation within 60 days of a referral and comply with all recommendations therein for a minimum of 180 days. During the CPA case, the Department indicated that it would submit an amended case plan that would include substance abuse testing and treatment and asked the magistrate court to order Doe to undergo substance abuse testing. Doe was ordered to complete a hair follicle drug test, which he did not complete.[1]

Doe asserts that he was not responsible for his failure to comply with the case plan, but even if he was, the failure "was not substantial." This Court has recognized that a finding of neglect for failure to comply with the case plan requires that the parent is responsible, either directly or indirectly, for the lack of compliance. *See Idaho Dep't of Health and Welfare v. Doe*, 161 Idaho 596, 600, 389 P.3d 141, 145 (2016).

Doe's claim that he was not responsible for failing to comply with the case plan is unpersuasive. For example, Doe concedes he did not maintain stable housing but claims he could not obtain safe and stable housing because he had an eviction on his record; he could not save enough money for alternate housing while paying for motel rooms; and the Department did not intervene to help Doe obtain stable housing. Doe asserts he was not responsible for failing to comply with the housing requirement because the Department's housing assistance consisted of the Department providing Doe with a resource manual regarding housing information without addressing Doe's financial limitations.

The magistrate court found that Doe's legal problems significantly affected Doe's ability to obtain or maintain stable housing and reunify with his children. For example, Doe

---

[1]     Neither the case plan nor the amended case plan are included in the record on appeal, and neither party sought to augment the record with the documents. However, Doe does not challenge the terms of the case plan or that he failed to meet them; thus, we will analyze the terms as articulated by the magistrate court. The parties do not challenge the lack of record or the magistrate court's articulation of the terms of the case plan; therefore, this Court will refer to those terms as uncontested terms of the case plan and we will presume the missing records support the findings of the trial court. *Estate of Ekic v. Geico Indemnity Company*, 163 Idaho 895, 897-98, 422 P.32 1101, 1103-04 (2018).

admitted to repeated periods of incarceration during the pendency of the CPA case. Doe was responsible for the behavior that led to his incarceration. Moreover, Doe has neither demonstrated that the resource manual provided by the Department was insufficient nor established how the Department was expected to address Doe's financial limitations. Doe testified to living in approximately thirteen different locations during the pendency of the case. The living situations included no less than three different motels; staying at a friend's home, his camper, and a rental; and periods of homelessness. The case manager testified that although not ideal, a motel room could be sufficient, but Doe failed to maintain the same motel room for any meaningful length of time. Contrary to Doe's argument, living in approximately thirteen different housing situations is not substantial compliance with the case plan. The record provides clear and convincing evidence that Doe was solely responsible for his inability to provide a safe and stable residence as required by the case plan.

Doe also claims that his failure to attend visits with his children was because the Department cancelled visits while he was regularly attending. This claim is belied by the record. Approximately forty visits were scheduled between the time the children were taken into care and June 2017. Of those forty visits, Doe cancelled (or Doe's inaction led to the cancellation of) thirteen visits, which is approximately one-third of the visits. Between June 2017 and August 2017, Doe was incarcerated, so no visits occurred. Upon his release, in September 2017, Doe cancelled three of the four scheduled visits. Visits ceased. A little less than a year later, the foster parents began facilitating visits between Doe and his children, but after Doe cancelled approximately one-third of those visits, the visits again ceased. By the end of the termination trial, Doe had moved out of state and his whereabouts were unknown. In light of this evidence, Doe has failed to establish that he was not directly responsible for failing to comply with the term of his case plan that he attend scheduled visitation with his children.

Doe argues he cannot be held responsible for failing to obtain substance abuse treatment when there were no funds available in the CPA case to pay for his treatment. It is true that the funding situation was beyond Doe's control at the time. However, although there were no general funds available in the CPA case, there was substance abuse treatment money available to Doe. As part of the CPA case, Doe was told he could attend classes and

6

after attending a specific number, obtain a "single case agreement" that would have made funding available on an individual basis. Doe was also told he could seek funding through the Department of Correction as part of his probation. Finally, Doe was told he could wait until the beginning of the new fiscal year (July 1, 2018) when he would be almost guaranteed to receive substance abuse treatment money through the CPA case. Doe obtained his GAIN evaluation in April 2018. He could have sought CPA funds for treatment shortly thereafter at the beginning of the new fiscal year. Doe did none of these things. Additionally, Doe testified that he did not believe he needed treatment or testing. He testified that he thought testing was a waste of time because he would tell his probation officer or the case manager if he had used drugs. His failure to obtain treatment was not the fault of the Department but rather, was based on Doe's unwillingness to obtain treatment.

Finally, Doe argues that his failure to obtain mental health treatment was not sufficiently egregious to warrant a finding of neglect. Doe's characterization of his mental health issues is unconvincing. The mental health evaluation found Doe's mental health needs were significant enough to warrant a recommendation for twelve months of treatment. Doe never challenged this condition of his case plan. Moreover, Doe recognizes that following through with mental health treatment would have permitted him to more successfully comply with and complete the terms of the case plan, demonstrating the significance of this requirement. There was clear and convincing evidence that Doe's failure to comply with the case plan was the direct result of Doe's behavior.

Doe also argues that the magistrate court erred in finding that Doe did not exercise sufficient parental control because Doe's single instance of leaving the children at the time the children were taken into custody is insufficient to justify a finding of neglect. The magistrate court's findings on this issue are supported by clear and convincing evidence. When the children were declared in imminent danger, Doe was out of town, leaving the children in Mother's care, despite knowing the children had been removed from Mother's care on a prior occasion because of neglect. At the termination hearing, Doe testified that Mother's substance abuse "messed up" her ability to parent, affected everything, and she was not "capable of being anything to anybody at that time." Doe also admitted this was not the only time he left the children in the care of Mother. Doe concedes that leaving the children in Mother's care could technically be neglect, but argues it does not rise to the level of neglect

because it only occurred one time. If one instance constitutes statutory neglect, multiple occurrences similarly establish an inability to exercise proper care and control over the children. Thus, despite Doe's argument to the contrary, repeatedly leaving his children with Mother, an unfit caregiver, establishes the failure to provide sufficient parental control.

The magistrate court found that Doe exhibited parental unfitness by his repeated incarceration, his untreated mental health and substance abuse issues, and the inability to provide safe and stable housing. The magistrate court found that Doe made almost no progress on his case plan and that the circumstances that resulted in the Department obtaining custody remained unchanged throughout the case. The magistrate court's findings that Doe neglected his children are supported by clear and convincing evidence.

### 2. The magistrate court did not err when it found termination is in B.P.'s and D.P.'s best interests

Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship. *In re Aragon*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). When determining whether termination is in the child's best interests, the trial court may consider the parent's history with substance abuse, the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the child's care after the child is placed in protective custody, the improvement of the child while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *In re Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015); *In re Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014). A finding that it is in the best interests of the child to terminate parental rights must still be made upon objective grounds. *In re Doe*, 152 Idaho 953, 956-57, 277 P.3d 400, 403-04 (Ct. App. 2012).

The magistrate court found that it is in the child's best interests to terminate Doe's parental rights. At the conclusion of the termination trial, B.P. and D.P. had been in the Department's care for thirty-two months. Not only had reunification not occurred, but as found by the magistrate court, Doe's situation at the conclusion of the proceedings was not significantly different than when the children were originally taken into care. Doe continued to use drugs, had unmanaged mental health issues, and his whereabouts were unknown by the end of the termination hearing. The magistrate court found that both children had mental health issues that Doe never addressed and the children received therapeutic services while in foster care which Doe never established or became involved with. The children improved in foster care

8

academically, emotionally, and behaviorally. Although D.P. had demonstrated some concerning behaviors, over time, those behaviors were managed and improved. The magistrate court found the children need long-term services and Doe is not equipped to meet the children's physical, financial, emotional, therapeutic, or medical needs. This finding is supported by substantial and competent evidence.

Doe argues the effect of terminating Doe's parental rights leaves the children legal orphans and it cannot be in the children's best interests to terminate Doe's rights when there was not a permanent placement for the children at the time of the termination hearing. In other words, he argues there has to be a comparative benefit to the child to terminating the parental relationship. Although the children had yet to receive a permanent adoptive placement at the time of the termination trial, that does not mean the children's permanency and stability would be better served by leaving the children in Doe's custody, nor is that a ground to set aside the magistrate court's findings. The magistrate court's conclusion that terminating Doe's parental rights is in the best interests of the children is supported by substantial and competent evidence.

Finally, Doe argues that terminating parental rights based solely on a finding of the best interests of the child without a statutory ground demonstrating parental unfitness is unconstitutional. He concedes that if a finding of parental unfitness is based on clear and convincing evidence that a parent has failed to exercise proper parental control necessary for the welfare of a child, then such a statutory provision would be constitutional, citing to *Idaho Dep't of Health and Welfare v. Doe*, 151 Idaho 498, 506 P.3d 1169 (2011). Nonetheless, he argues that in this case, the evidence is insufficient to find Doe was unfit. He asserts that failing to attend one-third of the visits, failing to make medical appointments, and failing to obtain suitable housing does not render him unfit. This Court disagrees.

In addition to the reasons cited by Doe, the magistrate court found that "Doe has not provided [the children] subsistence, education, medical or other care and control necessary for their well-being" and that Doe left the children in Mother's care despite knowing she was not a fit caregiver. Based on the factual record, there was substantial and competent evidence to support the magistrate court's finding that Doe did not exercise proper parental care and control over the children and that termination is in the children's best interests.

9

**IV.**

**CONCLUSION**

The magistrate court's findings that Doe neglected his children are supported by substantial and competent evidence. Doe's failure to comply with or complete the case plan was due to his repeated incarceration; his unwillingness to obtain and complete mental health and substance abuse treatment; and his failure to provide a safe and secure residence for B.P. and D.P. The magistrate court's conclusion that terminating Doe's parental rights to his two minor children is in the children's best interests is supported by substantial and competent evidence. The magistrate court's judgment terminating Doe's parental rights is affirmed.

Judge LORELLO and Judge BRAILSFORD **CONCUR**.