# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 47729

| | |
|---|---|
| In the Matter of John Doe I, A Child Under Eighteen (18) Years of Age. | ) ) |
| STATE OF IDAHO, DEPARTMENT OF HEALTH AND WELFARE | ) ) ) |
| | ) Filed: May 20, 2020 |
| | ) |
| Plaintiff-Respondent, | ) Karel A. Lehrman, Clerk |
| | ) |
| v. | ) THIS IS AN UNPUBLISHED |
| | ) OPINION AND SHALL NOT |
| JANE DOE (2020-02), | ) BE CITED AS AUTHORITY |
| | ) |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Elmore County. Hon. Theodore Fleming, Magistrate Judge.

Judgment terminating parental rights, <u>affirmed</u>.

Hall, Friedly, and Ward; Brian Peterson, Mountain Home, for appellant.

Hon. Lawrence G. Wasden, Attorney General; John R. Shackelford, Deputy Attorney General, Boise, for respondent.

HUSKEY, Chief Judge

Jane Doe appeals from the magistrate court's judgment terminating her parental rights. Doe asserts the magistrate court erred when it found she neglected her child and it is in the best interests of the child to terminate Doe's parental rights. The magistrate court's judgment terminating Doe's parental rights is affirmed.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Doe is the non-biological mother of R.H.-C. On May 3, 2018, following a traffic stop, Doe was arrested on charges of possession of methamphetamine and burglary. At the time of her arrest, Doe's wife (R.H.-C.'s biological mother), R.H.-C., and Doe's wife's eight-month-old half-brother were in the car. The car was so messy and dirty that Doe's wife's half-brother was

1

initially unnoticed. The smell in the car of garbage and rotting food was overwhelming and likely caused by the piles of garbage and rotting food in the car and the trunk. Doe's wife's half-brother is not involved in this appeal. R.H.-C. was dirty, did not appear to have been bathed in several days, and had a chemical burn on his left thigh potentially caused by sitting for a prolonged period in a urine-soaked diaper. He had finger marks on his left arm as if he had been grabbed by an adult. His clothing was dirty and urine-stained. His car seat was soaked with urine and covered in feces and rotting food. R.H.-C. was small for his age and exhibited delays in growth, weight, and language. Because Doe and her wife were arrested, R.H.-C. was declared in imminent danger.[1] Doe stipulated to R.H.-C. remaining in the custody of the Department of Health and Welfare (Department) at the shelter care hearing. Although Doe bonded out of jail on May 8, 2018, she did not appear at the adjudicatory hearing and stipulated to giving the Department custody because of her unstable living situation. At the adjudicatory hearing, a default was entered against Doe.

Doe did not attend the case plan hearing set for June 20, 2018, but her attorney subsequently reviewed the case plan requirements and Doe understood the requirements. The magistrate court accepted the case plan and ordered a review hearing set for September 19, 2018. The case plan's goal was reunification. The case plan required Doe to: (1) demonstrate age appropriate parenting skills and meet the basic needs of R.H.-C. including his financial, medical, dental, and developmental needs; participate in parental coaching; actively participate in R.H.-C.'s medical, dental, and developmental appointments and demonstrate her ability to follow recommendations made by R.H.-C.'s providers; and provide safe and appropriate housing; (2) remain substance free, complete a substance abuse class, and complete random drug tests; and (3) complete a mental health evaluation and comply with all recommendations.

On September 13, 2018, a case plan status update was filed. Doe was aware of the requirements of the case plan, but she was back in custody on additional criminal charges. In terms of visitation, between May 3 and September 19, six visits had occurred between R.H.-C. and one or both of his parents, and eleven visits had been missed or cancelled. As a result of the May 3 arrest, Doe was ultimately convicted of felony possession of a controlled substance, burglary, and misdemeanor child endangerment. The district court retained jurisdiction, and

---

[1] Doe's wife's parental rights were also terminated. Her appeal is pending in Supreme Court Docket No. 47330.

Doe remained in custody from approximately August 2018 until April 8, 2019. While on the rider, Doe successfully completed a substance abuse treatment class and the Thinking for a Change class. In addition to those charges, Doe had charges of felony possession of a controlled substance and driving under the influence pending in Ada County.

A six-month review hearing was scheduled for October 31, 2018. Doe had not had any visitation with R.H.-C. since her return to custody in August. Although Doe had made some progress on her case plan, her progress was the result of classes she had taken while in custody, and the Department did not find the progress satisfactory. While she was in custody, Doe began weekly video visitation with R.H.-C. After successfully completing the rider, Doe was released on probation.

Upon her release, Doe initially complied with some aspects of her case plan. For example, Doe visited with R.H.-C., began setting up mental health services and outpatient substance abuse treatment, and was attempting to acquire employment and establish housing. However, Doe's efforts were quickly derailed. Approximately three weeks after her release on probation, Doe admitted that she began using methamphetamine. When she began using, Doe testified she did not consistently visit R.H.-C. because she did not want to be around R.H.-C. while under the influence of controlled substances. Additionally, Doe did not follow through on the initial steps she had taken to comply with her case plan. Her initial visits with R.H.-C. were sporadic, and the Department noticed that Doe was not providing appropriate direction to R.H.-C. during the visits, likely because she did not understand his developmental needs and had been out of his life for almost a year. Although earlier she began to set up mental health services and substance abuse treatment, she did not establish or attended any mental health or substance abuse treatment. Further, she was living either in a homeless shelter or with her mother, who also used methamphetamine. Doe agreed that the residence was not a safe place for R.H.-C. and was not conducive to Doe maintaining her sobriety. Also, Doe could not financially support herself or R.H.-C. Moreover, Doe was again arrested for misdemeanor possession of drug paraphernalia and was back in custody by June 2019. In August 2019, Doe also accrued additional misdemeanor charges of possession of a controlled substance and paraphernalia.

On July 5, 2019, the Department filed a petition to terminate Doe's parental rights, alleging three counts of neglect pursuant to Idaho Code § 16-2002(3)(a). The petition alleged Doe failed to demonstrate appropriate parenting by failing to meet R.H.-C.'s basic needs (Count

V); had substance abuse and criminal thinking that impaired her ability to provide proper parental care and control of the child (Count VII); and failed to complete the court-ordered case plan with the child in the custody of the Department for the last fifteen months (Count VIII).[2] Because of the lack of communication, a summons for the termination hearing was served on Doe by publication. The Department alleged that Doe had not addressed her life circumstances that resulted in R.H.-C. being taken into custody in May of 2018, including her continued use of controlled substances. As a result, the Department requested to change the permanency goal from reunification to termination of parental rights and adoption. The magistrate court granted the motion and set the termination hearing for November 2019.

During the termination hearing, Doe testified that she had not been able to meet any of R.H.-C.'s needs for the last eighteen months, but prior to R.H.-C. being taken into custody she had been meeting his needs "for the most part." She also admitted she had not consistently engaged in visits with R.H.-C., had not scheduled or attended any medical or dental appointments, lived in a home with a methamphetamine addict, and the home was not a safe or stable place for R.H.-C. Doe specifically acknowledged it would not be in R.H.-C.'s best interests to reside in that particular home, but she had no other residence established.

Following the termination hearing, the magistrate court made numerous factual findings. The magistrate court found that Doe had significant substance abuse issues and began using controlled substances just a few weeks after her release from the rider. The magistrate court also found that the concerns which initially brought R.H.-C. into custody had not been sufficiently alleviated and that Doe had not provided any financial support for R.H.-C., demonstrated protective parenting abilities, provided a safe and stable home environment, or demonstrated the ability to meet all of the child's needs. Despite Doe's love for her child, the magistrate court concluded Doe's visitation consisted of no visits in August 2019, one visit in September 2019, and one visit in October 2019. The magistrate court also found Doe had been unable to put R.H.-C.'s needs above her own substance abuse and criminal behavior, demonstrating a lack of insight into her parenting capability and her inability to provide for R.H.-C.'s health, safety, and well-being. The magistrate court also found that Doe had not complied with the case plan and that R.H.-C. has improved significantly while in foster care and he is thriving.

---

[2] The petition to terminate parental rights was amended to correct the numbering of the allegations.

4

As a result, the magistrate court found there was clear and convincing evidence that Doe had neglected R.H.-C. as alleged in the petition and that reunification had not occurred in the fifteen months R.H.-C. was in the custody of the Department. The magistrate court then found that terminating Doe's parental rights was in the best interests of R.H.-C. so that he could have a parent who could provide him with not only love, but support, stability, and a drug-free and criminal-free environment in which to grow up. The magistrate court concluded that R.H.-C. was well cared for and had bonded with his foster parent and that termination of Doe's parental rights would provide R.H.-C. with the continued permanency, routine, and regularity with a stable parental figure that he had enjoyed and bonded with since coming into custody of the Department. According to the magistrate court, the uncontroverted testimony established that terminating Doe's parental rights would allow R.H.-C. "to have the real opportunity to continue to grow and develop in a safe, stable home, free of criminality and drug use." The magistrate court entered a judgment terminating Doe's parental rights and Doe appealed.

## II.

## STANDARD OF REVIEW

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *Doe v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *In re Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the magistrate court's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

Idaho Code § 16-2005 permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interests and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the

5

child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007).

## III.

## ANALYSIS

Doe challenges the magistrate court's finding that Doe neglected R.H.-C. and that terminating her parental rights is in the best interest of R.H.C. This Court affirms the magistrate court's findings that Doe neglected R.H.-C. and that terminating Doe's parental rights is in the best interests of R.H.-C.

### A.    The Magistrate Court Did Not Err When It Found Doe Neglected R.H.-C.

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *Doe*, 144 Idaho at 842, 172 P.3d at 1117. Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id.* Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *see also* I.C. § 16-2009; *In re Doe*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

The magistrate court terminated Doe's parental rights on the ground of neglect. Idaho Code § 16-2002(3)(a) defines "neglect" as any conduct included in I.C. § 16-1602(31). Section 16-1602(31)(a) provides, in pertinent part, that a child is neglected when the child is without proper parental care and control, or subsistence, medical or other care or control necessary for his or her well-being because of the conduct or omission of his or her parents, guardian, or other custodian or their neglect or refusal to provide them. Neglect also exists where the parent has

6

failed to comply with the court's orders or the case plan in a Child Protective Act case and the Department has had temporary or legal custody of the child for fifteen of the most recent twenty-two months and reunification has not been accomplished by the last day of the fifteenth month in which the child has been in the temporary or legal custody of the Department. I.C. § 16-2002(3)(b).

The Department filed a petition to terminate Doe's parental rights alleging three counts of neglect for: failing to demonstrate appropriate parenting (Count V); her inability to provide proper parental care and control because of her substance abuse and criminal thinking (Count VI); and her failure to complete the court-ordered case plan with the child in the custody of the Department for the last fifteen months (Count VII). The magistrate court found Doe neglected her child under all three counts. Doe challenges the findings of neglect under Counts VI and VII. Doe failed to challenge the finding of neglect under Count V. Thus, "this Court need not reach [Doe's] argument because, even if she is correct, the magistrate court's order contains additional, unchallenged findings of neglect that must be affirmed." *Matter of Doe*, 165 Idaho 46, 51, 437 P.3d 922, 927 (2019).

The magistrate court's finding that Doe neglected R.H.-C. as alleged in Count V by failing to demonstrate appropriate parenting is affirmed. However, even if this Court were to consider Doe's other arguments, the finding of neglect would still be affirmed.

Doe argues the magistrate court erred in finding she neglected R.H.-C. as demonstrated by her inability to provide proper parental care and control because of her substance abuse and criminal thinking. Doe argues that she put R.H.-C.'s needs ahead of her own by leaving him in the custody of the Department while she was in custody and after her release. We disagree. To the extent Doe is arguing she did not neglect R.H.-C. because he was in foster care, a parent is not relieved of her parental responsibilities because the care necessary for the child's well-being is provided by someone else. *Doe v. Doe I*, 162 Idaho 653, 659, 402 P.3d 1106, 1112 (2017).

Doe also appears to argue for the first time on appeal that she is "essentially temporarily disabled" and simply needed more time to reunify with R.H.-C. We disagree. Doe fails to point to anything in the record or by way of authority that would indicate her on-going drug use is the same as a disability as defined in the Child Protective Act (CPA). Failure to provide authority results in the issue being waived. *Idaho Dep't of Health & Welfare v. Doe*, 151 Idaho 498, 503

n.1, 260 P.3d 1169, 1174 n.1 (2011). Even after Doe completed substance abuse treatment, she continued to use controlled substances with sufficient frequency that it affected her ability to visit R.H.-C. and resulted in additional criminal charges. To the extent Doe is arguing that the Department should have provided additional resources to attempt reunification, it is well-settled that the Department's efforts at reunification are not relevant to the magistrate court's termination decision under Idaho Code § 16-2005. *See In re Doe*, 164 Idaho 883, 889, 436 P.3d 1232, 1238 (2019).

Based on the evidence in this case, there was clear and convincing evidence to support the magistrate court's findings that Doe neglected R.H.-C. as alleged in the petition. At the time R.H.-C. was taken into custody, he was dirty, had rashes from lack of hygiene, and had physical and behavioral developmental delays. Despite this, Doe testified the child's needs were "mostly met," even though she admitted to using methamphetamine with her wife while they were the primary caregivers of R.H.-C. Doe failed to comply with the case plan because of her on-going drug use, she failed to consistently engage in visitation, and failed to meet the basic needs of R.H.-C. Thus, the magistrate court's finding of neglect is affirmed.

While Doe concedes she did not complete her case plan and R.H.-C. was in custody for fifteen of the most recent twenty-two months, she argues the magistrate court erred in finding neglect on this ground because the magistrate court did not articulate its decision was discretionary. Doe also argues the magistrate court's finding that she did not complete her case plan is undermined by the fact that she was making good progress on her case plan. That argument is belied by the record. While Doe had obtained full-time employment approximately one month before the termination hearing, she had also accrued additional criminal charges, continued to use controlled substances, had sporadic visits with R.H.-C., provided no financial support of any kind, and did not follow through with mental health or substance abuse treatment. Although she had successfully completed substance abuse treatment while in custody, she relapsed within weeks of being released. She had no stable residence and agreed that it would not be in R.H.-C.'s best interests to stay with her where she was residing. By the time of the termination trial, R.H.-C. had remained in the Department's care for half of his life. Doe did not complete her case plan when she was out of custody. Consequently, the magistrate court's holding that Doe neglected her minor child is supported by substantial and competent evidence.

**B.    The Magistrate Court Did Not Err When It Found Termination Was in the Best Interests of R.H.-C.**

Doe argues the magistrate court's decision to terminate her parental rights should be reversed because the court erred when it found that it was in R.H.-C.'s best interests to terminate Doe's parental rights. Doe does not challenge any of the magistrate court's factual findings, only whether those findings rise to the level of clear and convincing evidence. Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the children to terminate the parent-child relationship. *In re Aragon*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). When determining whether termination is in the children's best interests, the trial court may consider the parent's history with substance abuse, the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the children's care after the children are placed in protective custody, the improvement of the children while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *In re Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015); *In re Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014). A finding that it is in the best interests of the children to terminate parental rights must still be made upon objective grounds. *In re Doe*, 152 Idaho 953, 956-57, 277 P.3d 400, 403-04 (Ct. App. 2012).

Doe argues the magistrate court's finding that termination was in the best interests of R.H.-C. was not supported by clear and convincing evidence because Doe loved and was bonded with R.H.-C. Love does not always translate into the ability to discharge parental responsibilities. *Idaho Dep't of Health & Welfare v. Doe*, 149 Idaho 165, 171, 233 P.3d 96, 102 (2010). Doe's love for R.H.-C. does not override the court's finding that terminating her parental rights was in R.H.-C.'s best interests. *See In re Doe*, 157 Idaho 694, 703, 339 P.3d 755, 764 (2014).

Doe also argues that had she been given more time to complete the case plan and had the Department done more to help her reunify with R.H.-C., termination would not have been necessary. As noted above, the efforts of the Department are not relevant during a termination proceeding. *See In re Doe*, 164 Idaho at 889, 436 P.3d at 1238. Additionally, nothing in the record indicates that additional time would have allowed Doe to successfully reunify with R.H.-C.

The magistrate court considered all the evidence and found that termination of Doe's parental rights is in the best interests of R.H.-C. Doe's substance abuse and criminal thinking were so pervasive that R.H.-C. was found dirty, had a chemical burn on his thigh, had finger marks on his arm, was sitting in a car seat soaked with urine and coated with feces and rotting food in a car filled with garbage and rotting food. The magistrate court found that even after successfully completing substance abuse treatment while on a rider, Doe relapsed within weeks and had no realistic plan for sobriety upon her release, for housing, or for providing a safe and stable residence for R.H.-C. As evidenced by the physical status of R.H.-C.--his delayed development for growth, weight, and language--Doe did not understand how to care for the child, nor had she demonstrated any insight into the child's needs throughout the pendency of the case.

The magistrate court found that the safety concerns that brought the child into care had not been sufficiently alleviated and Doe's case plan had not been completed. Doe had not provided any significant financial support for the child, demonstrated protective parenting abilities, provided a safe and stable home environment free of substance abuse and criminality, or exhibited the ability to meet all of R.H.-C.'s basic needs. Additionally, although Doe loves R.H.-C., she was unable to put his needs above her own criminality and significant drug use, which demonstrated a lack of insight into her parenting capability and her current (and prior) inability to meet the child's basic health, safety, and well-being needs.

The magistrate court also found that since R.H.-C. has been in foster care, he has bonded with his foster parent and thrived in her care. For example, when R.H.-C. entered foster care, he was apprehensive and had difficult behavioral issues. By the time of the termination hearing, he had become confident; he felt safe; and his demeanor had improved tremendously. Additionally, R.H.-C. has overcome all his developmental delays and there are no longer any health or developmental concerns. The magistrate court found the minor child has made great progress and is happy, loved, and thriving.

The magistrate court found that based on the length of time R.H.-C. has been in the custody of the Department, the significant progress he has made, his young age, and the importance of a permanent placement, it is in R.H.-C.'s best interests to terminate Doe's parental rights. The magistrate court also found that termination of Doe's parental rights would provide the minor child with the permanency, routine, and regularity with a stable parental figure that he

10

has enjoyed and bonded with since coming into the custody of the Department and that termination is appropriate so that R.H.-C. can continue to live and thrive with a sense of security, predictability, love, and attachment.

Here, the magistrate court considered Doe's testimony that she loves her child and had visitation with the child while in custody. In this case, Doe's love for her child and the fact that she had visitation with the child does not override the court's finding that terminating Doe's parental rights is in R.H.-C.'s best interests. As such, the magistrate court's determination that terminating Doe's parental rights is in the best interests of R.H.-C. is affirmed.

## IV.
## CONCLUSION

The magistrate court's judgment terminating Doe's parental rights is affirmed.

Judge GRATTON and Judge BRAILSFORD CONCUR.