IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 49643

| | |
|---|---|
| In the Interest of: John Doe I, Jane Doe I, Jane Doe II, Jane Doe III, and Jane Doe IV, Children Under Eighteen (18) Years of Age. | ) ) ) ) |
| STATE OF IDAHO, DEPARTMENT OF HEALTH AND WELFARE, | ) ) Filed: September 27, 2022 |
| Petitioner-Respondent, | ) ) Melanie Gagnepain, Clerk |
| v. | ) ) THIS IS AN UNPUBLISHED |
| JANE DOE (2022-12), | ) OPINION AND SHALL NOT ) BE CITED AS AUTHORITY ) |
| Respondent-Appellant. | ) ) |

Appeal from the Magistrate Division of the District Court of the Second Judicial District, State of Idaho, Idaho County. Hon. Victoria Olds, Magistrate.

Judgment terminating parental rights, affirmed.

McFarland Law Office; Joanna M. McFarland, Lewiston, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Briana Allen, Deputy Attorney General, Lewiston, for respondent.

_____

GRATTON, Judge

Jane Doe appeals from the magistrate court's judgment terminating her parental rights. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Jane Doe is the mother of the five minor children who are the subject of the proceedings in this case. The children were placed into the custody of the Department of Health and Welfare (Department) at the shelter care hearing in October 2020. The magistrate court ordered a case plan for Doe as part of reunification efforts.

1

In October 2021, after the magistrate court authorized the change in permanency goal to termination and adoption, the Department filed a petition to terminate Doe's parental rights. The termination trial took place in February and March, 2022. After the trial, the magistrate court found Doe neglected the minor children and that termination of Doe's parental rights is in the best interests of the children. Accordingly, the magistrate court entered a judgment terminating Doe's parental rights to the minor children.[1] Doe timely appeals.

## II.

## STANDARD OF REVIEW

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. Idaho Code § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id*. Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *see also* I.C. § 16-2009; *In re Doe*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id*. The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *In re Doe*, 143 Idaho

---

[1] Father's parental rights were also terminated but are not at issue in this appeal.

343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *In re Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the magistrate court's decision must be supported by objectively supportable grounds. *In re Doe*, 143 Idaho at 346, 144 P.3d at 600.

Idaho Code § 16-2005 permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interest and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

## III.

## ANALYSIS

Doe challenges the magistrate court's judgment terminating her parental rights to her children. Doe raised eight arguments on appeal[2]:

1. The magistrate court erred entering judgment in this matter on March 24, 2022 terminating [Doe's] parental right.
2. The magistrate court erred in concluding that the children were not Indian children under the Indian Child Welfare Act.
3. The magistrate erred in finding the circumstances that brought the children into shelter care.
4. That the magistrate court erred in finding that [Doe] failed to provide proper parental care and control necessary for the children's well[-]being due to her neglect.
5. The magistrate erred in finding that [Doe] failed to timely comply with the case plan.
6. The magistrate court erred in finding that the [Department] had made reasonable efforts towards reunification.
7. The magistrate court erred in finding that it was in the best interest of [Doe's] child for her parental rights to be terminated.
8. That [Doe's] trial attorney was ineffective in representation throughout the life of the CPS case as counsel made several errors throughout the proceedings that prejudiced the outcome.

We will address each argument below.

---

[2]     Doe's brief does not comply with Idaho Appellate Rule 35(a)(4) which requires a separate, concise, statement of the issues presented on appeal. Instead, Doe identifies the issues individually in section headings.

**A.      Terminating Doe's Parental Rights**

Doe lists several factual findings she argues are not supported by substantial and competent evidence in the record because the testimony during trial did not support them. Doe's concern is that the magistrate court supplemented the factual findings with knowledge the court had from prior involvement in the child protection action rather than evidence presented at the termination trial. The Department responds by citing where in the record there is substantial and competent evidence to support the magistrate court's factual findings.

First, Doe challenges the magistrate court's finding that the children are not Indian children under the Indian Child Welfare Act (ICWA). Doe also argues this as a separate substantive claim; as such, we will defer to the analysis of the claim below.

Next, Doe challenges the finding that Doe and the father refused to cooperate with the safety plan that occurred prior to the children's removal. However, the safety assessor testified that at a particular point in time, the parents indicated that they no longer wanted to work with the safety plan. Thus, substantial and competent evidence supports the magistrate court's finding that Doe and the father refused to cooperate with the safety plan.

Next, Doe challenges the magistrate court's finding that "Law enforcement contacts continued before [the] removal of the children from the home (based on parental conflict)" by the Department. During trial, Doe was asked whether one of the children called law enforcement between the time the children were placed back in the home and before removal. Doe confirmed the child had by stating, "I made him, yes." This is substantial and competent evidence to support the magistrate court's finding regarding law enforcement contact.

Next, Doe challenges the magistrate court's finding that the Department had conducted ten investigations of parental neglect and abuse in relation to Doe. The Department cites to Doe's case plan as supporting evidence. While the plan does not precisely recount ten investigations, it does document multiple reports concerning substance abuse, domestic violence, and neglect since 2009. Thus, there is substantial and competent evidence to support the magistrate court's finding that multiple investigations were conducted.

Next, Doe challenges the finding that the "children had missed too much school and the school reported serious concerns about the children's home life." Doe argues there is no indication that missing the first two weeks of school was "too much," especially since the children are academically successful. The safety assessor testified that the children had missed more school

4

days than the allotted quota for the year. She explained this is typically around nine days and the children's absences were in the teens. There is substantial and competent evidence to support the magistrate court's reasonable finding that the children "had missed too much school."

Next, Doe argues the magistrate court incorrectly found that Doe did not submit to random urinalysis tests because the caseworker testified that Doe provided urinalysis tests when asked. Doe also challenges the finding that she "eventually submit[ted] a couple [urinalysis tests] and a hair follicle test, which confirmed methamphetamine use." Doe argues there was no testimony that she confirmed or admitted methamphetamine use.

To be precise, the magistrate court found:

[Doe] completed a Comprehensive Diagnostic Assessment at Riverside Recovery, but did not follow the recommendation for Level 1 outpatient [treatment]. She would not attend groups. She did not submit to random [urinalysis tests], claiming not to need treatment. She was, however, open about her ongoing substance use. She did eventually submit a couple of [urinalysis tests] and a hair follicle test, which confirmed methamphetamine use.

The caseworker testified that Doe would not agree to substance abuse treatment, which included random urinalysis testing. The caseworker clarified that Doe was agreeable anytime the caseworker asked Doe to complete a urinalysis test or hair follicle test and that Doe was open and honest about her use. However, there is no testimony or evidence in the record that any of these urinalysis or hair follicle tests confirmed methamphetamine use. Therefore, while Doe acknowledged methamphetamine use, Doe is correct that there is not substantial and competent evidence that any drug tests confirmed methamphetamine use.

Next, Doe challenges the finding that one of the children, R.H., received speech therapy for a stutter. The testimony shows that R.H. stuttered after visitation with Doe, and that R.H. worked with a community-based rehabilitative services specialist on communication skills. This testimony is substantial and competent evidence to support the magistrate court's finding that R.H. received speech therapy for a stutter.

Lastly, Doe argues the magistrate court erred in finding that the children call the foster parents "Mama" and "Papa" when the testimony was that the children call them "NaNa" and "Poppa." The Department concedes this error but argues the discrepancy has no bearing on the termination of Doe's parental rights.

Even where a finding of fact is erroneous, this Court will disregard the error, unless it affects a party's substantial rights. Idaho Rule of Civil Procedure 61; *Doe I v. Doe*, 138 Idaho 893,

5

906, 71 P.3d 1040, 1053 (2003). Doe failed to argue how the exact number of Department investigations, the improper names for the foster parents, and the erroneous finding that drug testing confirmed methamphetamine use affected her substantial rights. Consequently, any error in those factual findings are disregarded.

**B.      Indian Child Welfare Act**

Doe argues the magistrate court erred in finding that the children were not Indian children under ICWA. Doe explains that the magistrate court erred by only receiving testimony from the father about the children's tribal status because tribal status must be determined for both the paternal and maternal sides. The Department argues the record demonstrates that the magistrate court inquired into ICWA at every hearing prior to termination and made written findings that ICWA did not apply. The Department further contends that even if the magistrate court should have asked Doe about the children's tribal status, the answer would not undermine the judgment to terminate her parental rights.

Even if the magistrate court erred by not asking Doe about the children's Indian status in the termination trial, Doe failed to explain how the error affected her substantial rights. As the Department argues, Doe has not shown how this error undermines the magistrate court's judgment to terminate Doe's parental rights. Doe does not claim new information about the children's ICWA eligibility, nor does she argue how this affects her substantial rights or would alter the judgment. As such, any error by the magistrate court will be disregarded because Doe has not shown that her substantial rights have been affected.

**C.      Shelter Care**

Doe argues the Department failed to present evidence to support the grounds for immediate removal and consequently the magistrate court erred in finding necessary circumstances existed at the shelter care hearing. The Department responds first by arguing the grounds for termination do not require proving the grounds for shelter care, and second, the grounds for shelter care are moot.

Statutory grounds for termination of parental rights include: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) inability to discharge parental responsibilities for a prolonged period, which will be injurious to the health, morals, or well-being of the child; or (e) incarceration for a substantial period of time during the child's minority. I.C. § 16-2005. Upon finding a statutory ground for termination, the court must also find that it is in the best interests of the child to terminate the parent-child

6

relationship.  I.C. § 16-2005(1).  Both findings must be established by clear and convincing evidence.  Accordingly, the Department was not required to prove the circumstances of shelter care to establish grounds for termination.[3]

**D.    Neglect**

Doe argues that there was not substantial and competent evidence in the record to support the magistrate court's findings about mental health and substance abuse issues as a basis for finding neglect.  The Department contends the testimony and evidence supported the magistrate court's conclusion that Doe neglected the children by failing to provide proper parental care and control.

The magistrate court found Doe neglected her children.  Idaho Code § 16-2002(3)(a) defines "neglect" as any conduct included in I.C. § 16-1602(31).  Section 16-1602(31)(a) provides, in pertinent part, that a child is neglected when the child is without proper parental care and control, or subsistence, medical or other care or control necessary for his or her well-being because of the conduct or omission of his or her parents, guardian, or other custodian or their neglect or refusal to provide them.

The magistrate court found "that [Doe] had not been sober since at least the 2020 relapse, and continued to use illegal substances (meth) throughout the CPA case."  Doe argues there was no testimony that confirmed methamphetamine use.

Doe first testified that her last relapse of use of methamphetamine was Father's Day of 2020, which would have been months prior to the children being removed.  Later, however, Doe testified that she relapsed one time in February 2021, which was during the child protection case.  Additionally, the caseworker testified that Doe reported a relapse by using an illicit drug, beyond marijuana, around May of 2021.  This is substantial and competent evidence for the magistrate court to find that Doe continued to use illegal substances, including methamphetamine.

In addition, Doe challenges the magistrate court's findings regarding Doe's alcohol and marijuana use. The magistrate court found Doe "uses marijuana regularly.  She ingests alcohol to excess.  She described herself as a 'raging alcoholic' between November 2020 and March 2021, after the children were removed from the home."  Doe does not challenge that substantial and competent evidence supported the magistrate court's findings.  Instead, Doe contends she is within

---

[3]      Moreover, the Department is correct that Doe was required to appeal the shelter care determination in the child protection case, not the termination proceeding.

her legal rights to use marijuana in the state of Washington and consume alcohol, and that there were no case plan tasks restricting her consumption of either. While consumption may be legal, it does not diminish the relevancy of these factors in relation to whether Doe failed to provide proper parental care and control. Therefore, it was appropriate for the magistrate court to consider how Doe's substance use affected her ability to parent.

Next, Doe challenges the magistrate court's mental health findings. The magistrate court found Doe "has historically refused to follow mental health treatment plans and rejected medication management services." Doe argues there is evidence to show she worked on her mental health concerns. According to Doe, she tried taking the recommended medications, discontinued only one medication for her own self-care, acquired a second opinion when she did not agree with the schizophrenia diagnosis, and after seeing numerous counselors, she found a counselor she is comfortable with and has visited routinely.

Dr. James Phillips' psychological evaluation of Doe diagnosed psychotic disorder, not otherwise specified. The recommendations included psychotropic medication, psychotherapy, abstaining from substances, substance abuse treatment, and an appeal of a social security disability determination. Dr. Phillips testified that Doe would need a minimum of six to twelve months of mental health treatment and abstinence from illicit substances to clarify her diagnosis and symptoms; this was also in the recommendations from the evaluation.

Doe explained that she had tried psychotropic medication prior to seeing Dr. Phillips but had to stop because of side effects that included extreme fatigue. Dr. Phillips addressed this in his recommendations, stating there are a variety of other medications to try. Doe did not seek a different psychotropic medication.

Doe was attending counseling; however, the caseworker testified that the counselor was not professionally qualified to provide psychotherapy. Dr. Phillips testified he recommended psychotherapy due to the use of psychological techniques to work with mental disorders.

Furthermore, the caseworker testified that Doe did not participate in substance abuse treatment because Doe felt she did not need substance abuse treatment. Doe testified that she continued to use marijuana and alcohol, and the caseworker testified Doe said she would not stop using marijuana. The psychological evaluation recommendation was to participate in substance abuse treatment and abstain from substances for at least six months to clarify Doe's symptoms and diagnosis. The testimony shows Doe failed to comply with all the recommendations made by

8

Dr. Phillips, which is substantial and competent evidence to support the magistrate's conclusion that Doe refused to follow the mental health plan and rejected medication management.

Finally, Doe argues the magistrate court erred by finding there was a direct connection between instances of psychosis and her substance abuse. Doe argues this finding is speculative and not supported by the testimony at the termination trial. Dr. Phillips recommended Doe abstain from substances for six to twelve months to clarify Doe's diagnosis and symptoms. Doe testified that the children's father "shot her up" with a drug mixture three days prior to her hospitalization for hearing voices and believing battery acid was shot up her vagina. Doe testified she later understood that experience to be a mental break. This was substantial and competent evidence to support the magistrate court's finding that there was a connection between Doe's psychosis and her substance use.

Substantial and competent evidence in the record supports the finding that Doe "consistently and chronically returned to the use of substances and refused to address her mental health needs. A pattern of behavior that has endured and began long before the CPA case began." This finding supports the conclusion that Doe neglected her children by not being able to provide proper parental care and control necessary for the children's well-being.

**E.    Case Plan**

Doe argues the magistrate court erred in finding that Doe failed to timely comply with the case plan. Because each statutory ground of neglect is an independent basis for termination, we need not address Doe's arguments regarding neglect by failure of a parent to complete a case plan. *See Roe v. Doe*, 142 Idaho 174, 179, 125 P.3d 530, 535 (2005). None the less, the magistrate court did not err in finding that Doe failed to complete the case plan.

Doe argues the magistrate court erred in finding that Doe failed to timely comply with the case plan. Neglect also exists where the parent has failed to comply with the court's orders or the case plan in a child protective act case and the Department has had temporary or legal custody of the child for fifteen of the most recent twenty-two months and reunification has not been accomplished by the last day of the fifteenth month in which the child has been in the temporary or legal custody of the Department. I.C. § 16-2002(3)(b).

Doe argues she completed the purpose of each case plan task and that any delays in completion were due to the negligence of the Department in assisting her. The Department points to the caseworker's testimony addressing Doe's performance on each case plan task.

9

Under Task1A, Doe articulated a financial plan but was not consistent with monthly meetings to discuss case plan progress. Under Task1B, Doe completed the substance abuse evaluation but did not complete the recommendation for level one outpatient treatment. Throughout the proceedings, Doe struggled with alcohol abuse, methamphetamine relapse, and constant marijuana use. Under Task1C, Doe completed two psychological evaluations but did not follow the recommendations of either. Doe could not complete the parenting assessment due to COVID-19 restrictions; therefore, the Department provided an alternative through therapeutic visitation. Doe's mental health remained unaddressed and unmanaged through trial. Although Doe started to consistently engage in counseling, the counselor was not qualified to provide the necessary psychotherapy to address Doe's mental health diagnosis.

Doe argues she completed Task1E because she acquired suitable housing with the option for "expansion." Yet, Doe acquired this housing just prior to trial and there had not been time for the caseworker to visit prior to the termination trial. Doe's history showed she struggled to acquire stable housing and moved repeatedly throughout the case. It was unknown at the time of trial if Doe would be able to maintain the housing she had because her history suggested otherwise; Doe did not demonstrate she successfully completed this task.

There was substantial and competent evidence to support the conclusion that Doe failed to comply with her case plan. Doe does not dispute that the children were in the care of the Department at least fifteen of the last twenty-two months and reunification never occurred. Accordingly, the magistrate court did not err when it found Doe neglected her children by virtue of not complying with the case plan.

**F.      Reasonable Efforts**

Doe argues the Department failed to provide reasonable efforts and that this affected her due process rights. Doe acknowledges that an inquiry into the Department's efforts at reunification is irrelevant to the termination of parental rights, *Idaho Dep't of Health & Welfare v. Doe (2017-21)*, 163 Idaho 83, 94, 408 P.3d 81, 96 (2017), but argues there are compelling arguments that the lack of immediate appellate recourse "impacts her due process rights." Yet, Doe failed to provide any argument as to why this Court should overlook proper procedure and address the Department's reasonable efforts at reunification. Instead, Doe lists what she believes the Department did wrong and continues to argue how she believes she complied with her case plan. A party waives an issue on appeal if either argument or authority is lacking. *Powell v. Sellers*, 130 Idaho 122, 128, 937

10

P.2d 434, 440 (Ct. App. 1997). Doe has failed to provide a cogent argument or proper authority; the Department's reasonable efforts are irrelevant to the termination decision and we will not address them on appeal.

**G.    Best Interests**

Doe argues the magistrate court erred in finding that termination of parental rights is in the best interests of the children when there were alternative permanency options, including guardianship, which would satisfy the concerns of the parties.

Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship. *In re Aragon*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). When determining whether termination is in the child's best interests, the trial court may consider the parent's history with substance abuse, the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the child's care after the child is placed in protective custody, the improvement of the child while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *In re Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015); *In re Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014). A finding that it is in the best interests of the child to terminate parental rights must still be made upon objective grounds. *In re Doe*, 152 Idaho 953, 956-57, 277 P.3d 400, 403-04 (Ct. App. 2012).

Doe does not directly challenge the magistrate court's findings that termination is in the best interests of the children. Instead, Doe argues the magistrate court should have addressed trial counsel's argument that guardianship would provide a better alternative to termination because then the children would have an ongoing relationship with their mother. When the permanency goal changed from reunification to termination and adoption, the magistrate court could have considered guardianship. The magistrate court was not required to expressly address guardianship as an alternative at the termination trial, nor does that possibility undermine the magistrate court's finding that termination is in the best interests of the children.

The magistrate court acknowledged the improvement the children made while in foster care, the bond each has with their foster parents, and the oldest children's desires to be adopted. There is substantial and competent evidence to support the magistrate court's conclusion that termination is in the best interests of each child.

11

**H.     Ineffective Assistance of Counsel**

Doe argues her trial counsel's actions and omissions fell outside an objective standard of reasonableness and constituted deficient performance, which resulted in prejudice.

Pursuant to I.C. § 16-2009, Doe has a right to counsel during a termination hearing and the Idaho Supreme Court has determined that I.C. § 16-2009 provides for effective representation in proceedings terminating parental rights. *Idaho Dep't of Health & Welfare v. Doe (2010-28)*, 150 Idaho 563, 566, 249 P.3d 362, 365 (2011). The Idaho Supreme Court, however, has not yet established a standard for assessing ineffective assistance of counsel claims in termination cases, and we decline to do so here. However, because the parties rely on *Strickland v. Washington*, 466 U.S. 668 (1984) to analyze the issue, we address Doe's arguments to the extent the record on direct appeal allows consideration of the challenges Doe raises.

To prevail on an ineffective assistance of counsel claim under *Strickland*,[4] which is applied in criminal cases, the petitioner must show that the attorney's performance was deficient and that the petitioner was prejudiced by the deficiency. *Id.* at 687-88. To establish a deficiency, the petitioner has the burden of showing that the attorney's representation fell below an objective standard of reasonableness. *Aragon v. State*, 114 Idaho 758, 760, 760 P.2d 1174, 1176 (1988); *Knutsen v. State*, 144 Idaho 433, 442, 163 P.3d 222, 231 (Ct. App. 2007). To establish prejudice, the petitioner must show a reasonable probability that, but for the attorney's deficient performance, the outcome of the trial would have been different. *Aragon*, 114 Idaho at 761, 760 P.2d at 1177; *Knutsen*, 144 Idaho at 442, 163 P.3d at 231. In the context of criminal proceedings, this Court has long adhered to the proposition that tactical or strategic decisions of trial counsel will not be second-guessed on appeal unless those decisions are based on inadequate preparation, ignorance of relevant law, or other shortcomings capable of objective evaluation. *Gonzales v. State*, 151 Idaho 168, 172, 254 P.3d 69, 73 (Ct. App. 2011).

Doe asserts five instances that her trial counsel was ineffective. First, Doe argues counsel failed to object to hearsay during the termination trial and consequently the magistrate court relied upon that testimony in making its determination. The Department argues there was an independent basis for nearly each statement Doe challenges; moreover, Doe failed to show counsel's lack of objection was anything more than tactical or strategic. Doe fails to provide legal authority for the

---

4       *Strickland v. Washington*, 466 U.S. 668 (1984).

claim that certain evidence was inadmissible hearsay. A party waives an issue on appeal if either argument or authority is lacking. *Powell*, 130 Idaho at 128, 937 P.2d at 440. Even if the evidence was hearsay, Doe fails to show prejudice. Doe alleges the magistrate court relied upon evidence regarding: events happening inside the residence at the time the children were declared in imminent danger; the children's school attendance; reports that the two oldest children tried to run away from home prior to removal; and the results of the mental health assessment from Dr. Grogan. Disregarding all of this evidence, substantial and competent evidence supports the termination of Doe's parental rights. In fact, the magistrate court primarily focused upon Doe's unmanaged mental health, continuous substance abuse, and lack of stable housing to find that Doe had neglected her children. Doe was not prejudiced by the alleged hearsay.

Second, Doe argues trial counsel was ineffective because he failed to question vital witnesses during trial, which essentially conceded the facts relied on by the magistrate court. The manner of cross-examination is considered a tactical or strategic decision. *Giles v. State*, 125 Idaho 921, 924, 877 P.2d 365, 368 (1994). Doe failed to point to a specific instance that necessitated cross-examination and conceded it was unclear what difference it would have made. Trial counsel's lack of cross-examination is a tactical decision that this Court will not second-guess; moreover, Doe implicitly conceded there was no proof of prejudice.

Third, Doe argues trial counsel was ineffective because he failed to present evidence of the impossibility defense he argued in closing. The magistrate court found Doe neglected her children both due to an inability to provide proper parental care and control as well as a failure to complete her case plan. The impossibility defense only applies to case plan compliance. *Idaho Dep't of Health & Welfare v. Doe (2016-14)*, 161 Idaho 596, 600, 389 P.3d 141, 145 (2016). The magistrate court found Doe neglected her children due to an inability to provide proper parental care and there was substantial and competent evidence to support this finding. Doe has failed to demonstrate prejudice based on an impossibility defense on appeal.

Fourth, Doe argues trial counsel was ineffective because he failed to file a motion with the magistrate court to change the permanency goal to guardianship rather than termination and adoption. Doe contends trial counsel failed to present the motion at both prior hearings and the termination trial. Proceedings under the child protection case are irrelevant to the termination trial. *See In re Doe I*, 164 Idaho 883, 890, 436 P.3d 1232, 1239 (2019). Thus, any challenge to those proceedings is untimely. Doe, however, fails to allege prejudice. The magistrate court found

13

termination is in the best interests of the children and it is unclear how a motion to change the permanency goal to guardianship would have altered that finding. In addition, trial counsel did suggest guardianship during his closing statement. Even if it was not an official motion, he brought it to the magistrate court's attention.

Lastly, Doe contends trial counsel was ineffective because he failed to preserve the argument that the Department deprived Doe of her rights under the Americans with Disabilities Act (ADA). However, trial counsel argued during closing argument that the ADA required the Department to provide Doe with accommodations for her mental illness and that Doe had asked for accommodations throughout the pendency of the child protection case. The magistrate court addressed trial counsel's argument that Doe's claimed disability was reason for continued efforts at reunification; and found insufficient evidence to show Doe qualified for any specific services and how those services could sufficiently aid her in parenting. Thus, Doe failed to demonstrate ineffective assistance of counsel for failure to preserve an ADA defense. An ADA accommodations request must be made in the CPA proceeding. *See* I.C. 16-1621(3)(c). Because the CPA case is not properly before this Court on appeal, we need not address this claim.

**IV.**

**CONCLUSION**

Substantial and competent evidence supports the magistrate court's finding that Doe neglected her children and that termination is in the best interests of the children. The judgment terminating Doe's parental rights to the minor children is affirmed.

Chief Judge LORELLO and Judge BRAILSFORD **CONCUR**.

14